THIRD DIVISION
March 29, 2006

No. 1-03-3552

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellee, | ) | of Cook County. |
| | ) | |
| v. | ) | No. 03 CR 4976 |
| | ) | |
| JOHNNIE WILSON, | ) | Honorable |
| | ) | William G. Lacy, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE THEIS delivered the opinion of the court:

Following a bench trial, defendant Johnnie Wilson, who was on mandatory supervised release (MSR)[1] from a 15-year sentence for armed violence, was convicted of possession of a controlled substance and sentenced to 8 years' imprisonment. On appeal, he contended that (1) the trial court erred in denying his motion to suppress evidence because the search pursuant to his MSR agreement violated his fourth amendment right to be free from unreasonable searches and seizures; (2) the evidence was insufficient to prove him guilty beyond a reasonable doubt; (3) the compulsory extraction and perpetual storage of his DNA profile violated his fourth amendment right; and (4) the trial court failed to provide him with accurate and complete admonishments pursuant to Supreme Court Rule 605(a) (Official Reports Advance Sheet No. 21 (October 17, 2001), R. 605(a), eff. October 1, 2001). In People v. Wilson, 361 Ill. App. 3d 93,

---

[1] What was referred to as "parole" in Illinois prior to February 1, 1978, is now termed "mandatory supervised release" (MSR). 730 ILCS 5/5-8-1(d) (West 2002).

1-03-3552

836 N.E.2d 159 (2005), we reversed the denial of defendant's motion to suppress evidence and remanded the case for a new suppression hearing. Thereafter, the supreme court denied the State's petition for leave to appeal, but pursuant to its supervisory authority, directed us to vacate our judgment and reconsider this case in light of its recent decision in People v. Moss, 217 Ill. 2d 511, 842 N.E.2d 699 (2005). People v. Wilson, 217 Ill. 2d 624, 840 N.E.2d 1243 (2006). After vacating our original opinion and reconsidering our judgment in light of Moss, we again reverse and remand for a new suppression hearing.

BACKGROUND

On February 3, 2003, after serving one year of his MSR term, defendant was arrested and charged with possession of a controlled substance with intent to deliver. Prior to trial, defendant filed a motion to quash his arrest and suppress evidence. At the hearing, parole officer Raymond Hayes testified that in February 2003, he received information from his supervisor that an anonymous person had informed his supervisor that defendant had narcotics and guns in his apartment in violation of the conditions of his MSR. Officer Hayes then went to 1541 South Karlov in Chicago where he met two Chicago police officers. Defendant's relative gave them permission to enter the apartment. Officer Hayes did not have a warrant to search the apartment, but did have in his files defendant's MSR agreement, which was introduced as an exhibit at the hearing. Paragraph 10 of the agreement states, "you shall consent to a search of your person, property or residence under your control." Officer Hayes testified that defendant signed the agreement in February 2002 and was still governed by the rules at the time of his arrest.

After entering the second-floor apartment with the relative's permission, Officer Hayes

2

saw defendant emerge from a bedroom and handcuffed him. According to Officer Hayes, defendant told him that the bedroom was his bedroom. Officer Hayes then told defendant that he was there to search his room and the space over which he had control. Officer Hayes did not ask for defendant's consent to search the room and did not read him his Miranda rights. Hayes then watched the two Chicago police officers search the bedroom, where they found suspected cocaine and heroin in a pile of clothing.

At the conclusion of the hearing, the trial court found that defendant consented to the search as a condition of his MSR and that he did not enjoy the same rights as those free from the custody of the Illinois Department of Corrections. Accordingly, the trial court held that the search was proper and denied defendant's motion to quash his arrest and suppress evidence. However, the court granted defendant's motion to suppress his statement regarding the location of his bedroom due to Officer Hayes' failure to read him his Miranda rights.

At trial, Officer Hayes testified consistently with his testimony at the hearing. In addition, he described the location of the searched bedroom as "a few feet from the front door to your left as you come through the front door." He also explained that defendant reported his address to the Illinois Department of Corrections as part of the conditions of his MSR. In addition to finding narcotics in a pile of clothing, narcotics were also found under the bed and in other locations in the bedroom.

Chicago police officer Daniel Paluck testified that the searched bedroom contained men's clothing and that, according to his recollection, defendant was the only male present in the apartment. Additionally, Officer Paluck testified that he saw a female whom he believed to be

3

defendant's girlfriend emerge from the bedroom. Paluck did not retrieve any proof of residence from the bedroom, but stated that during processing defendant confirmed his address as 1541 South Karlov. The parties stipulated with respect to the testing of the narcotics and the chain of custody.

The trial court found that the searched room was defendant's bedroom and that he had constructive possession of the narcotics. Therefore, the trial court found defendant guilty of possession of a controlled substance and sentenced him to eight years' imprisonment.

ANALYSIS

Defendant contends that the search of his apartment conducted pursuant to a condition in his MSR agreement violated his fourth amendment right to be free from unreasonable searches and seizures. Specifically, he argues that: (1) despite the condition in his MSR agreement requiring that he "shall consent to a search of [his] person, property or residence under [his] control," he retained some expectation of privacy; (2) the search was conducted without a warrant; and (3) the search was unsupported by reasonable suspicion that he possessed guns and narcotics. The State maintains that the search was proper because defendant consented to it as a condition of his MSR. Alternatively, the State argues it was a reasonable search considering the reduced expectations of privacy possessed by parolees and the State's significant interest in ensuring compliance with the conditions of their supervised release.

In reviewing a circuit court's ruling on a motion to suppress, this court will uphold findings of historical fact unless they are against the manifest weight of the evidence. People v. Pitman, 211 Ill. 2d 502, 512, 813 N.E.2d 93, 100 (2004). However, a reviewing court remains

free to undertake its own assessment of the facts in relation to the issues presented and may draw its own conclusions when deciding what relief should be granted. Accordingly, we review *de novo* the ultimate question of whether the evidence here should be suppressed. Pitman, 211 Ill. 2d at 512, 813 N.E.2d at 101.

Initially, we address the State's argument that by accepting the conditions of his MSR agreement, defendant prospectively consented to all searches, thereby relieving defendant of any expectation of privacy and waiving his fourth amendment rights. We note that the State's argument is based upon a fundamental misconception of MSR in Illinois. Without citation to authority, the State asserts that defendant has "negotiated his release from actual physical custody," that without his prior agreement, he "would not be released," and that defendant was "given the privilege of parole, something that is not mandatory." Rather, the Unified Code of Corrections provides that the MSR term is a mandatory component of defendant's sentence. Except where a natural life sentence has been imposed, "every sentence shall include as though written therein a term in addition to the term of imprisonment." 730 ILCS 5/5-8-1(d) (West 2002). The statute then sets forth a mandatory term of three years' supervised release for first degree murder or a Class X felony, two years for a Class 1 or 2 felony, and one year for a Class 3 or 4 felony. 730 ILCS 5/5-8-1(d) (West 2002). Accordingly, the MSR term is not a negotiated release or a privilege. Rather, it is a mandatory part of defendant's sentence.

Furthermore, this argument was recently rejected in Moss. That court held that the search condition of a defendant's MSR does not establish prospective consent to all searches and does not waive his fourth amendment rights. Moss, 217 Ill. 2d at 526, 842 N.E.2d at 709. The

same analysis is applicable here. The conditions of defendant's MSR agreement provide that he shall do or refrain from doing certain things, thereby creating a duty which implies the requirement of further action. By signing the agreement, defendant acknowledged that if he refuses to permit the search, he faces revocation of his MSR. However, his acknowledgment does not entirely relieve him of any expectation of privacy or waive his fourth amendment protection. Moss, 217 Ill. 2d at 526, 842 N.E.2d at 709.

In the absence of consent, we consider whether the search was otherwise appropriate. The fourth amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. Thus, a search does not infringe upon the fourth amendment if it is "reasonable," when "measured in objective terms by examining the totality of the circumstances." Ohio v. Robinette, 519 U.S. 33, 39, 136 L. Ed. 2d 347, 354, 117 S. Ct. 417, 421 (1996). Generally, the search of a home is only reasonable for fourth amendment purposes if it is conducted pursuant to a warrant grounded in probable cause absent exigent circumstances. Payton v. New York, 445 U.S. 573, 590, 63 L. Ed. 2d 639, 653, 100 S. Ct. 1371, 1382 (1980).

Nevertheless, the United States Supreme Court found that under certain circumstances, a search of a probationer's home can be reasonable without strict adherence to the ordinary warrant and probable cause requirements. United States v. Knights, 534 U.S. 112, 121, 151 L. Ed. 2d 497, 506, 122 S. Ct. 587, 592 (2001); Griffin v. Wisconsin, 483 U.S. 868, 873, 97 L. Ed. 2d 709, 717, 107 S. Ct. 3164, 3168 (1987). In Griffin, the Supreme Court upheld a search of a probationer's home conducted pursuant to a Wisconsin regulation permitting "any probation

6

officer to search a probationer's home without a warrant as long as his supervisor approves and as long as there are 'reasonable grounds' to believe the presence of contraband," finding that the "special needs" of Wisconsin's probation system justified an exception to the usual warrant and probable-cause requirements.  Griffin, 483 U.S. at 870-71, 97 L. Ed. 2d at 715, 107 S. Ct. at 3167.  Thereafter, the Knights Court held that a warrantless search of a probationer's residence was reasonable under the fourth amendment when the search was supported by reasonable suspicion and authorized by a condition of his probation.  However, the Court left open the question whether reasonable suspicion is required for such a search.  Knights, 534 U.S. at 120 n.6, 151 L. Ed. 2d at 505 n.6, 122 S. Ct. at 592 n.6.

Following Griffin and Knights, our supreme court held in People v. Lampitok, 207 Ill. 2d 231, 798 N.E.2d 91 (2003), that a search of a probationer's motel room supported by reasonable suspicion and pursuant to a search condition of her probation would be constitutionally reasonable.  Thereafter, in Moss, 217 Ill. 2d at 532-33, 842 N.E.2d at 712-13, our supreme court held that a pat-down search for weapons on a parolee subject to a search condition was reasonable without any individualized suspicion of illegal activity.

In determining whether the search was appropriate here, we initially consider whether the "special needs" test of Griffin is applicable to the extent the search of defendant's residence was conducted for a "supervisory" purpose.  In Griffin, the Supreme Court held that a probation search was reasonable under the fourth amendment because it was conducted in compliance with a valid regulation permitting warrantless probation searches upon "reasonable grounds," a standard which the Wisconsin Supreme Court found had been met.  Griffin, 483 U.S. at 880 &

7

1-03-3552

n.8, 97 L. Ed. 2d at 721-22 & n.8, 107 S. Ct. at 3172 & n.8.

Section 3-3-7 of the Unified Code of Corrections addresses the conditions of MSR in Illinois. The statute requires that defendant consent to a search of his person, property or residence under his control. 730 ILCS 5/3-3-7 (West 2002). The search condition is silent with respect to imposing a particular standard of suspicion to support a search. Additionally, the relevant section of the Illinois Administrative Code does not specifically address the search condition of those on MSR nor does it impose a particular standard of suspicion to support such a search. See 20 Ill. Adm. Code §1610.120, as amended by 13 Ill. Reg. 3063 (eff. February 28, 1989) (addressing the conditions of MSR). Given the lack of standards comparable to those present in Griffin, we find that Griffin does not control our analysis here.

Rather, to determine if a search for evidence in the home of a person subject to MSR[2] is objectively reasonable under a lesser degree of suspicion, we examine whether the search was reasonable under the totality of the circumstances. Knights, 534 U.S. at 118, 151 L. Ed. 2d at 505, 122 S. Ct. at 591. The reasonableness of the search is determined by balancing *the degree to which the search intrudes upon the privacy interests of a defendant on MSR against the degree to which the search is needed to promote legitimate governmental interests,* with the search condition of

---

[2] For purposes of fourth amendment analysis, there is no distinction between a parolee and a defendant on MSR. Moss, 217 Ill. 2d at 514 n. 1, 842 N.E.2d at 702 n.1.

8

1-03-3552

defendant's MSR being "a salient circumstance." Knights, 534 U.S. at 118, 151 L. Ed. 2d at 505, 122 S. Ct. at 591.

In Moss, our supreme court confronted this balancing test when concluding that a pat-down search of a defendant on MSR without any level of individualized suspicion and pursuant to a search condition of MSR was constitutionally reasonable under the fourth amendment during a traffic stop and consensual automobile search. Moss, 217 Ill. 2d at 532, 842 N.E.2d at 713. In evaluating the governmental interests, the court focused on the State's interest in officer safety. The court found that the circumstances confronting the officers during a Terry stop, requiring passengers to leave a vehicle and an officer to place himself in a compromising position, increased the government's interest in ensuring that those passengers were not armed. Accordingly, the court held that those officer safety circumstances contributed to the government's interest in performing a pat-down search of the defendant. Moss, 217 Ill. 2d at 530-31, 842 N.E.2d at 711-12. In contrast to Moss, in this case, we are not presented with a protective search or officer safety concerns attendant to a traffic stop but, rather, with a full-fledged search for evidence in defendant's residence while he was handcuffed. The same heightened level of interest in officer safety attendant to a traffic stop is not at issue here. Accordingly, we next consider defendant's MSR status as it relates to the State's interest in the search.

In evaluating the governmental interests in Lampitok, the court held that administration of the probation system is a "special need" of the State beyond the typical needs of law enforcement that would justify a greater governmental intrusion on privacy than would be

9

acceptable in the case of an ordinary citizen. <u>Lampitok</u>, 207 Ill. 2d at 250, 798 N.E.2d at 104.

The court further found that imposing the traditional warrant and probable cause requirements

would unduly interfere with the State's ability to administer its probation system. To obtain a

warrant would delay the ability to respond to evidence of misconduct, and to require probable

cause would only facilitate the probationer's ability to conceal his misconduct in violation of the

conditions of probation. <u>Lampitok</u>, 207 Ill. 2d at 250, 798 N.E.2d at 104. Based upon these

considerations, our supreme court acknowledged that Illinois's probation system may justify a

warrantless search of a probationer upon a lesser degree of suspicion than probable cause.

<u>Lampitok</u>, 207 Ill. 2d at 250, 798 N.E.2d at 104.

In <u>Moss</u>, the court found that the governmental interest in public safety espoused in

<u>Lampitok</u> is even more apparent in the case of those serving a term of MSR. <u>Moss</u>, 217 Ill. 2d at

531, 842 N.E.2d at 712. They, like probationers, require supervision and enjoy only

"'conditional liberty properly dependent on observance of special * * * restrictions.'" <u>Griffin</u>,

483 U.S. at 874, 97 L. Ed. 2d at 718, 107 S. Ct. at 3169, quoting <u>Morrissey v. Brewer</u>, 408 U.S.

471, 480, 33 L. Ed. 2d 484, 494, 92 S. Ct. 2593, 2600 (1972); <u>Moss</u>, 217 Ill. 2d at 522, 842,

N.E.2d at 706-07 ("[p]robationers and persons on MSR are similarly situated in the broad sense

that both enjoy conditional liberty"). However, because parolees present a greater risk to the

public, the objective of community safety would justify an even greater intrusion on a parolee's

privacy. See 730 ILCS 5/5-6-1(a) (West 2002); <u>Moss</u>, 217 Ill. 2d at 531, 842 N.E.2d at 712.

Nevertheless, although these governmental interests may "justify departures from the

usual warrant and probable-cause requirements" (<u>Griffin</u>, 483 U.S. at 874, 97 L. Ed. 2d at 717,

107 S. Ct. at 3168), these interests do not necessarily authorize a substantial invasion of privacy without *any* level of individualized suspicion (Griffin, 483 U.S. at 875, 97 L. Ed. 2d at 718, 107 S. Ct. at 3169 (the permissible impingement on a probationer's privacy is not unlimited)). In determining the appropriate level of individualized suspicion, if any, we must also consider defendant's expectation of privacy in his home and its relationship to his MSR status and the search condition of his MSR term.

Those offenders on MSR have a significantly reduced expectation of privacy compared to ordinary citizens because they are criminal offenders subject to a prison term and are subject to certain restrictions as a condition of their release. Moss, 217 Ill. 2d at 531, 842 N.E.2d at 712; Lampitok, 207 Ill. 2d at 250-51, 798 N.E.2d at 104. In Illinois, the conditions of MSR are governed by section 3-3-7 of the Code (730 ILCS 5/3-3-7 (West 2002)). Paragraph 10 of section 3-3-7(a) addresses the relevant search condition. That paragraph requires that defendant "consent to a search of [his] person, property, or residence under [his] control." 730 ILCS 5/3-3-7(a)(10) (West 2002).

The breadth of a search condition affects a defendant's expectation of privacy. Moss, 217 Ill. 2d at 531, 842 N.E.2d at 712. In Lampitok, the probation conditions provided that the probationer " 'shall submit to a search of her person, residence, or automobile at any time as directed by her Probation Officer to verify compliance with the conditions of this Probation Order.' " Lampitok, 207 Ill. 2d at 236, 798 N.E.2d at 96. In Knights, the defendant's probation conditions permitted searches " 'with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law enforcement officer.' " Knights, 534 U.S. at 114, 151 L.

11

Ed. 2d at 502, 122 S. Ct. at 589. Based upon the defendant's acceptance of this broad search condition, the Court concluded that the defendant had a "significantly diminished" expectation of privacy. Knights, 534 U.S. at 119-20, 151 L. Ed. 2d at 505, 122 S. Ct. at 591-92.

In Moss, the court found that the condition of a defendant's MSR in Illinois is equally as broad as the condition in Knights because it requires that he consent to a search of his person, residence, or property under his control without any limitation on the purpose of the search or the government agent who may perform the search. Moss, 217 Ill. 2d at 532, 842 N.E.2d at 712. The court also found that the conditions of MSR are more extensive than the conditions of probationers because they limit where they may live, with whom they may associate, and the places they may frequent. Moss, 217 Ill. 2d at 532, 842 N.E.2d at 712, citing 730 ILCS 5/3-3-7 (West 2004). Accordingly, a person subject to MSR has a lesser expectation of privacy than a probationer. Moss, 217 Ill. 2d at 532, 842 N.E.2d at 712.

Although defendant has a significantly reduced expectation of privacy as a parolee subject to a broad search condition, the Supreme Court has acknowledged that the fourth amendment accords special protection to the intrusion into one's home. Payton, 445 U.S. at 589, 63 L. Ed. 2d at 653, 100 S. Ct. at 1381-82, quoting U.S. Const., amend. IV. Where the MSR search invades the home, it weighs heavily in the balance that determines whether the search is reasonable and remains a significant, rather than minimal, intrusion on defendant's albeit diminished expectations of privacy. Lampitok, 207 Ill. 2d at 252, 254, 798 N.E.2d at 105, 106. Accordingly, permitting a suspicionless search of defendant's home would offend the significantly protected status of the home, and thus, supports the conclusion that defendant's

expectation of privacy is not completely extinguished. Lampitok, 207 Ill. 2d at 252, 798 N.E.2d at 105 ( "[t]he primacy of fourth amendment protection against intrusions into a person's home further encourages us to require some level of individualized suspicion prior to a probation search of a probationer's residence").

We reject the State's contention that defendant's expectation of privacy in his home is no different than his expectation when confined in a prison merely because he remains in the custody of the Illinois Department of Corrections. While the fourth amendment does not apply within the confines of a prisoner's cell (Hudson v. Palmer, 468 U.S. 517, 525-26, 82 L. Ed. 2d 393, 402-03, 104 S. Ct. 3194, 3200 (1984)), the Supreme Court has unequivocally rejected the notion that the status of parolees is legally comparable to that of prisoners in actual custody. Morrissey, 408 U.S. at 482, 33 L. Ed. 2d at 494-95, 92 S. Ct. at 2600-01; United States v. Crawford, 323 F.3d 700, 708-09 (9th Cir. 2003). Therefore, the mere fact that a defendant on MSR remains in custody is not dispositive of a defendant's privacy interests.

Additionally, in Moss, the court considered the scope of the intrusion. There, the court held that "[t]he limited scope of a pat-down search for weapons, as opposed to a full-fledged search for evidence, was appropriate where no individualized suspicion of illegal activity existed." Moss, 217 Ill. 2d at 532-33, 842 N.E.2d at 713. Here, we are not faced with the limited scope of a pat-down search for weapons during a Terry stop but, rather, with a significant intrusion into defendant's residence. This invasion cannot be considered a minor invasion of privacy and, thus, further supports the conclusion that while probable cause is not required, a search of defendant's residence must be attendant to some quantum of individualized suspicion

13

to meet the reasonableness standard of the fourth amendment.

Based upon the totality of the circumstances, after balancing the State's interest in its MSR system with defendant's expectation of privacy, we conclude that a search of defendant's home pursuant to the conditions of his MSR agreement is reasonable if supported by reasonable suspicion. As the supreme court stated in Lampitok, most other federal courts have agreed that reasonable suspicion is the appropriate constitutional threshold for parole or probation searches, especially, as in this case, where they involve intrusion into the home. Lampitok, 207 Ill. 2d at 253, 798 N.E.2d at 105-06 (compiling a list of cases).

Accordingly, we find that the trial court erred in denying defendant's motion to suppress evidence on the basis that defendant consented to the search condition of his MSR agreement. Rather, the trial court must evaluate whether the officers had reasonable suspicion to believe that defendant had narcotics or guns in his home or otherwise violated the terms of his MSR so that the search was justified at its inception under the fourth amendment. Therefore, we reverse the denial of defendant's motion to suppress evidence and remand for a new suppression hearing consistent with our directive in this opinion. For these reasons, we need not address defendant's additional contentions at this time. Nevertheless, we retain jurisdiction to determine these contentions should the State prevail at the new hearing on the motion to suppress.

Reversed and remanded with directions.

QUINN, P.J., and GREIMAN, J., concur.

**THE PEOPLE OF THE STATE OF ILLINOIS,**

      **Plaintiff-Appellee,**

      **v.**

**JOHNNIE WILSON,**

      **Defendant-Appellant.**

**No. 1-03-3552**

**Appellate Court of Illinois**
**First District, Third Division**

**Filed: March 29, 2006**

**JUSTICE THEIS delivered the opinion of the court.**

**Quinn, P.J., and Greiman, J., concur.**

**Appeal from the Circuit Court of Cook County**
**Honorable William G. Lacy, Judge Presiding**

| | |
|---|---|
| **For APPELLANT,** | **Michael J. Pelletier, State Appellate Defender** |
| | **Melinda G. Palacio, Assistant Appellate Defender** |
| | **Office of the State Appellate Defender** |
| | **203 N. LaSalle St., 24th Floor** |
| | **Chicago, IL 60601** |
| | |
| **For APPELLEE,** | **Richard A. Devine, State's Attorney** |
| | **Renee Goldfarb, Assistant State's Attorney** |
| | **Sally L. Dilgart, Assistant State's Attorney** |
| | **Annette Collins, Assistant State's Attorney** |
| | **Dragana Djordjevic, Assistant State's Attorney** |
| | **300 Richard J. Daley Center** |
| | **Chicago, IL 60602** |