Docket No. 102562.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

---

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOHNNIE WILSON, Appellee.

*Opinion filed February 7, 2008.*

JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Fitzgerald, Kilbride, Garman, and Karmeier concurred in the judgment and opinion.

## OPINION

At issue in this case is whether a warrantless, suspicionless search of a parolee is prohibited by the fourth amendment.

In the instant case, a parole officer, acting on an anonymous tip that defendant Johnnie Wilson was violating the conditions of his parole agreement, ordered two police officers to search defendant's bedroom, despite not having a search warrant or receiving defendant's consent. After the search yielded cocaine and heroin, defendant was charged with possession of a controlled substance with intent to deliver. Before trial, defendant moved to suppress the drug evidence, arguing that the fourth amendment of the United States Constitution prohibited the search of his bedroom.

The circuit court of Cook County denied the motion, finding that defendant consented to the search when he signed his mandatory supervised release (MSR) agreement. The appellate court reversed defendant's conviction and remanded the matter for a suppression hearing. 364 Ill. App. 3d 762. For the reasons that follow, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

BACKGROUND

On February 27, 2002, defendant was placed on mandatory supervised release (MSR)[1] from a 15-year sentence for armed violence. When defendant was released, he signed a "Parole or Mandatory Supervised Release Agreement" (MSR agreement), which set forth the conditions of his release in accordance with section 3–3–7 of the Unified Code of Corrections (730 ILCS 5/3–3–7 (West 2002)). Two of the conditions were as follows:

"You shall consent to a search of your person, property, or residence under your control";

and

"You shall refrain from the use or possession of narcotics or other controlled substances in any form, or both."

The MSR agreement also stated:

"If such rules are violated, parole or mandatory supervised release may be revoked under the rules and regulations promulgated by the Prisoner Review Board or other releasing authority. *** Until final discharge, you shall at all times be under the legal custody of the Department of Corrections, subject to being retaken at any time, with the establishment of probable cause, and the lodging of a warrant, within the enclosure of an Illinois State correctional center."

---

[1]What was referred to as "parole" in Illinois prior to February 1, 1978, is now termed "mandatory supervised release" (MSR). 730 ILCS 5/5–8–1(d) (West 2006). For clarity, Illinois defendants on MSR shall be referred to as "parolees" in this opinion.

On February 3, 2003, defendant, who was on parole, was arrested and charged with possession of a controlled substance with intent to deliver. Prior to his bench trial, defendant filed a motion to quash his arrest and suppress evidence. A hearing on defendant's motion was held on March 18, 2003.

At the hearing, parole officer Raymond Hayes testified that, on February 3, 2003, his office received an anonymous tip that defendant had narcotics and weapons in his apartment. Hayes stated that, based on this tip, he visited defendant's apartment with two Chicago police officers to investigate this possible parole violation. At the apartment, he was given permission to enter by a relative who was "either [defendant's] mother or grandmother."

Upon entering the apartment, Hayes saw defendant emerge from a bedroom just a few feet from the front door. Defendant told Hayes that the bedroom was his. Hayes then instructed the police officers to search defendant's bedroom. The police officers found several containers of substances that the Illinois Crime Lab later determined to be cocaine and heroin.

Hayes admitted that he did not have a warrant to search defendant or his room and did not ask defendant for his consent to search the room. Hayes testified that he felt neither a warrant nor defendant's consent was needed because defendant's MSR agreement constituted defendant's consent to any searches of his person, property, or residence.

At the conclusion of the hearing, the trial court denied the motion to suppress evidence, finding that defendant consented to the search when he signed his MSR agreement. Following a bench trial on September 23, 2003, defendant was found guilty of possession of a controlled substance and sentenced to eight years' imprisonment.

On appeal, the appellate court held, based on a totality of the circumstances, that the search of defendant's bedroom was improper. Accordingly, the appellate court reversed defendant's conviction and remanded the matter for a new trial. *People v. Wilson*, 361 Ill. App. 3d 93 (2005). The State then appealed to this court. We denied the appeal, but ordered the appellate court to vacate its decision and reconsider its judgment in light of *People v. Moss*, 217 Ill. 2d 511 (2005). Upon reconsideration, the appellate court again reversed

defendant's conviction and remanded the matter for a new trial. 364 Ill. App. 3d 762. This appeal followed.

## ANALYSIS

Initially, we note that the search in question was nonconsensual. Officer Hayes did not ask for consent before ordering the search of defendant's bedroom. Moreover, defendant's search condition, which mandated that he "shall consent to a search," did not constitute prospective consent. See *People v. Lampitok*, 207 Ill. 2d 231, 260-61 (2003) ("shall submit" in a search condition charges a probationer with the duty to submit to a search when directed to do so; it does not constitute prospective consent). The State concedes that the search was nonconsensual, but argues that it was reasonable nonetheless and that the appellate court erred in reversing the circuit court's denial of defendant's motion to suppress evidence.

Generally, our review of a circuit court's ruling on a motion to suppress evidence involves both questions of fact and law. *Moss*, 217 Ill. 2d at 517. We will uphold findings of historical fact made by the circuit court unless such findings are against the manifest weight of the evidence. *People v. Pitman*, 211 Ill. 2d 502, 512 (2004). If we uphold the factual findings, we review *de novo* whether suppression is appropriate under those facts. *Moss*, 217 Ill. 2d at 518. In the instant case, there are no questions of fact disputed by the parties. Accordingly, we review the application of law to the facts *de novo*.

### Applicable Law

The fourth amendment to the United States Constitution, which guarantees the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, applies to the states through the due process clause of the fourteenth amendment. *People v. James*, 163 Ill. 2d 302, 311 (1994). Generally, the fourth amendment requires the government to possess a warrant supported by probable cause for a search to be considered reasonable. *Illinois v. McArthur*, 531 U.S. 326, 330, 148 L. Ed. 2d 838, 847, 121 S. Ct. 946, 949 (2001). However, the requirement for a warrant has been held unnecessary in cases involving probationers and parolees when the search is deemed reasonable. See *United States*

*v. Knights*, 534 U.S. 112, 122, 151 L. Ed. 2d 497, 507, 122 S. Ct. 587, 593 (2001); *Samson v. California*, 547 U.S. ___, ___, 165 L. Ed. 2d 250, 262, 126 S. Ct. 2193, 2202 (2006); *Moss*, 217 Ill. 2d at 534. In determining the reasonableness of a warrantless search, a court must examine the totality of the circumstances and assess, on the one hand, the degree to which the search intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests. *Knights*, 534 U.S. at 118-19, 151 L. Ed. 2d at 505, 122 S. Ct. at 591.

In a series of cases, the United States Supreme Court and this court have held that probationers and parolees enjoy a greatly diminished expectation of privacy due to their status as probationers and parolees, and the salient government interest in preventing recidivism and protecting society from future crimes. See *Griffin v. Wisconsin*, 483 U.S. 868, 880, 97 L. Ed. 2d 709, 722, 107 S. Ct. 3164, 3172 (1987) (warrantless search of probationer's home by state probation officers pursuant to Wisconsin regulation requiring "reasonable grounds" held not to violate fourth amendment); *Knights*, 534 U.S. at 121, 151 L. Ed. 2d at 506-07, 122 S. Ct. at 593 ("When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable"); *Lampitok*, 207 Ill. 2d at 251 (search of a probationer's residence is reasonable as long as it is performed by a probation officer who has reasonable suspicion to investigate violations of probation); *Moss*, 217 Ill. 2d at 532 (warrantless, suspicionless pat-down search of parolee for weapons is reasonable, and any evidence found during such a search is admissible, when the safety of an investigating officer is at issue). In contrast to the diminished expectations of privacy of probationers and parolees, the state's interest in supervising parolees has been held to be substantial. See *Knights*, 534 U.S. at 120-21, 151 L. Ed. 2d at 506, 122 S. Ct. at 592 (state's interest in protecting potential victims of crimes by reoffenders allows it to focus on probationers in a way that it does not on the ordinary citizen); *Moss*, 217 Ill. 2d at 531 ("The state is justified in focusing greater attention on probationers because of their higher likelihood of recidivism.

-5-

[Citation.] Persons on MSR, even more than probationers, present a risk to the public").

The appellate court recognized that defendant, as a parolee, had a diminished expectation of privacy, and that the state had a legitimate interest in preventing recidivism and protecting society from future crimes. 364 Ill. App. 3d at 770. However, the appellate court held that because the search at issue was not a pat-down search, as in *Moss*, but rather a full-fledged search of a residence for evidence, it offended the "significantly protected status" of his home. 364 Ill. App. 3d at 771. Consequently, the court held that defendant maintained an expectation of privacy in his home that would outweigh the interests of the state unless the State was able to prove that it had reasonable suspicion to conduct the search. 364 Ill. App. 3d at 771. The appellate court then reversed the circuit court and remanded the cause with instructions to the circuit court to evaluate whether the officers had reasonable suspicion to believe that defendant violated the terms of his MSR so that the search was justified. 364 Ill. App. 3d at 772.

Defendant contends that the appellate court acted properly in reversing the circuit court, and requests cross-relief on the grounds that a new hearing on remand would erroneously give the State a second opportunity to establish probable cause and reasonable suspicion, which it failed to do previously. The State argues that the appellate court's decision should be reversed, and that no reasonable suspicion should be required for a warrantless search of defendant's residence, because this issue is now controlled by *Samson v. California*, 547 U.S. ___, 165 L. Ed. 2d 250, 126 S. Ct. 2193 (2006), a United States Supreme Court case announced after the decision of the appellate court in the instant case.

In *Samson*, the petitioner was walking down a street when he was spotted by a police officer who was aware that the petitioner was on parole following a conviction for possession of a firearm by a felon. *Samson*, 547 U.S. at ___, 165 L. Ed. 2d at 255, 126 S. Ct. at 2196. The police officer stopped the petitioner and, based solely on the petitioner's status as a parolee, searched the petitioner. *Samson*, 547 U.S. at ___, 165 L. Ed. 2d at 256, 126 S. Ct. at 2196. During the search, the officer found methamphetamine in one of the petitioner's shirt pockets. *Samson*, 547 U.S. at ___, 165 L. Ed. 2d at 256, 126 S. Ct. at 2196. The State then charged the petitioner with possession of

a controlled substance. *Samson*, 547 U.S. at ___, 165 L. Ed. 2d at 256, 126 S. Ct. at 2196.

The petitioner filed a motion to suppress the methamphetamine evidence, which was denied. *Samson*, 547 U.S. at ___, 165 L. Ed. 2d at 256, 126 S. Ct. at 2196. A jury then convicted the petitioner of the possession charge and sentenced him to seven years' imprisonment. *Samson*, 54 U.S. at ___, 165 L. Ed. 2d at 256, 126 S. Ct. at 2196. The California Court of Appeal affirmed the trial court, holding that suspicionless searches of parolees are lawful under California law. *Samson*, 54 U.S. at ___, 165 L. Ed. 2d at 256, 126 S. Ct. at 2196. The United States Supreme Court then granted *certiorari* to determine "whether a condition of release can so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search by a law enforcement officer would not offend the Fourth Amendment." *Samson*, 547 U.S. at ___, 165 L. Ed. 2d at 256, 126 S. Ct. at 2196.

The examination of the petitioner's expectation of privacy began with an assessment of his status as a parolee, as compared to the petitioner in *Knights*, who was a probationer. *Samson*, 547 U.S. at ___, 165 L. Ed. 2d at 258, 126 S. Ct. at 2198. The Court held that, like probationers, parolees are on the "continuum" of state-imposed punishments and, in fact, have even fewer expectations of privacy than probationers "because parole is more akin to imprisonment than probation is to imprisonment." *Samson*, 547 U.S. at ___, 165 L. Ed. 2d at 258, 126 S. Ct. at 2198. The Court explained that parole is not a simple release from imprisonment, but rather an alternative to continued confinement that is eligible only to those who agree to abide by certain rules for the balance of their sentence. *Samson*, 547 U.S. at ___, 165 L. Ed. 2d at 258, 126 S. Ct. at 2198. However, the Court made clear that it was not equating parolees with prisoners for the purpose of concluding that parolees, like prisoners, have no fourth amendment rights. *Samson*, 54 U.S. at ___ n.2, 165 L. Ed. 2d at 258 n.2, 126 S. Ct. at 2198 n.2.

The Court found that the general conditions of California's parole, which included, among other things, mandatory drug testing and meetings with parole officers, restrictions on association with felons or gang members, a ban on ownership of firearms and specified weapons, and a requirement to request permission from a parole officer to travel more than 50 miles from home, clearly demonstrated

that parolees have "severely diminished expectations of privacy by virtue of their status alone." *Samson*, 547 U.S. at ___, 165 L. Ed. 2d at 259, 126 S. Ct. at 2199. Additionally, the Court found that the parole search condition under California law–which requires inmates who opt for parole to submit to suspicionless searches by either parole officers or police officers at any time–was clearly expressed to the petitioner before he signed his parole agreement. *Samson*, 547 U.S. at ___, 165 L. Ed. 2d at 259, 126 S. Ct. at 2199. The Court held that because the petitioner accepted his "clear and unambiguous" search condition, his expectations of privacy were "significantly diminished." *Samson*, 165 L. Ed. 2d at 259, 126 S. Ct. at 2199. The Court then held, "Examining the totality of the circumstances pertaining to petitioner's status as a parolee, 'an established variation on imprisonment,' [citation] including the plain terms of the parole search condition, we conclude that petitioner did not have an expectation of privacy that society would recognize as legitimate." *Samson*, 547 U.S. at ___, 165 L. Ed. 2d at 259, 126 S. Ct. at 2199.

Turning to the "governmental purpose" side of the balance, the Court found that California had an " 'overwhelming interest' in supervising parolees because 'parolees ... are more likely to commit future criminal offenses.' " *Samson*, 547 U.S. at 165 L. Ed. 2d at 260, 126 S. Ct. at 2200, quoting *Pennsylvania Board of Probation & Parole v. Scott*, 524 U.S. 357, 365, 141 L. Ed. 2d 344, 353, 118 S. Ct. 2014, 2020 (1998). The Court noted that "this court has repeatedly acknowledged that a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." *Samson*, 547 U.S. at ___, 165 L. Ed. 2d at 260, 126 S. Ct. at 2200. After citing empirical evidence[2] illustrating the significance of the state's interest in preventing recidivism, the Court

---

[2]The court cited figures provided by the California Attorney General showing that 68% of adult parolees are returned to prison. Fifty-five percent are returned for a parole violation, and 13% for the commission of a new felony offense. California Attorney General, *Crime in California* 37 (April 2001). Further, a separate study revealed that 70% of California's paroled felons reoffended within 18 months of being released from physical custody. See J. Petersilia, *Challenges of Prisoner Reentry and Parole in California*, 12 Cal. Pol'y Res. Center Brief 2 (June 2000).

held, "California's ability to conduct suspicionless searches of parolees serves its interest in reducing recidivism, in a manner that aids, rather than hinders, the reintegration of parolees into productive society." *Samson*, 547 U.S. at ___, 165 L. Ed. 2d at 260, 126 S. Ct. at 2200. Moreover, the Court found that a requirement that searches be based on individualized suspicion would "give parolees greater opportunity to anticipate searches and conceal criminality" and "undermine the State's ability to effectively supervise parolees and protect the public from criminal acts by reoffenders." *Samson*, 54 U.S. at ___, 165 L. Ed. 2d at 261, 126 S. Ct. at 2200-01.

The Court held that, while some states may impose additional requirements for individualized suspicion, the fourth amendment does not require reasonable suspicion for all searches. *Samson*, 547 U.S. at ___ n.4, 165 L. Ed. 2d at 261 n.4, 126 S. Ct. at 2201 n.4. The Court then noted that reasonableness, not individualized suspicion, is "[t]he touchstone of the Fourth Amendment." *Samson*, 54 U.S. at ___ n.4, 165 L. Ed. 2d at 261 n.4, 126 S. Ct. at 2201 n.4. The Court concluded, "the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." *Samson*, 54 U.S. at ___, 165 L. Ed. 2d at 262, 126 S. Ct. at 2202.

The State argues that *Samson* not only reinforces the legitimacy of this state's interest in preventing recidivism, but also establishes that defendant's status as a parolee, along with the terms of his search condition, diminishes his expectation of privacy to a point that society would not recognize as legitimate. Defendant does not contest the legitimacy of the state's interest in preventing recidivism, but contends that *Samson* is not controlling on the issue of his expectations of privacy. Defendant argues that because the MSR system in Illinois differs significantly from the California system, and because his search condition is unlike the search condition used in California, *Samson* does not apply here. Defendant also contends that *Samson* made no findings regarding the search of a parolee's residence and, as such, is inapplicable to the instant case. We shall address these arguments in turn.


Parole Systems

Defendant argues that our mandatory MSR system affords an Illinois parolee a greater expectation of privacy than a California parolee, who may "elect" to stay in the physical custody of the

department of corrections or choose to accept a set of conditions and complete his sentence on parole. According to defendant, because MSR is mandatory for an Illinois prisoner, he is not presented with the choice between staying in prison or being released on parole, and therefore does not have the same level of "unambiguous awareness" of the acceptance of a search condition that California prisoners have.

We find defendant's argument to be without merit. There is nothing in the statutes that govern the Illinois parole system that supports defendant's contention that Illinois parolees are somehow less aware than their California counterparts that they are accepting a collection of conditions in order to secure their release from physical custody. Further, we can find no appreciable differences between each state's operational process for entering a period of parole or for remaining on parole.

In California, prisoners sentenced to any term, other than natural life in prison without parole, may become eligible for parole based on a decision of the Board of Parole Hearings. Cal. Penal Code §3041 (West 2007). California prisoners who are declared eligible for parole must sign and retain a copy of a parole agreement that places conditions on their liberty during their parole, including a condition that requires them to be subject to search or seizure at any time for any reason. Cal. Penal Code §3067 (West 2007). If a California prisoner refuses to sign such an agreement, he remains imprisoned. Cal. Penal Code §3060.5 (West 2007). In California, parolees enjoy freedom from the physical custody of the California Department of Corrections, but remain under the legal custody of the Department, and are subject to reimprisonment for any violations of their parole agreement. Cal. Penal Code §3056 (West 2007).

Similarly, in Illinois, prisoners not serving a term of natural life imprisonment have the opportunity to become eligible for parole (730 ILCS 5/3–3–3(c) (West 2006)), and when eligible for parole are presented with an agreement that sets forth the conditions of their release from the physical custody of the Department of Corrections (730 ILCS 5/3–3–7 (West 2006)). They must sign this agreement and retain a copy in order to secure their release from the physical custody of the Department of Corrections. 730 ILCS 5/3–3–7(c) (West 2006); *People v. Powell*, 217 Ill. 2d 123, 128 (2005) (prisoner who refused to sign his MSR agreement was kept in physical custody). Illinois

parolees remain in the legal custody of the Department of Corrections for the duration of their parole. 730 ILCS 5/3–14–2(a) (West 2006).

We find that the parole systems of Illinois and California are very much alike in operation. The parallels illustrated above belie defendant's assertion that the systems of the two states differ to the degree that precludes *Samson* from controlling our analysis of a search of an Illinois parolee.

Search Conditions

In *Samson*, the Court found that the reduced expectation of privacy a parolee has is further diminished by his acceptance of the clear and unambiguous terms of the search condition contained in his parole agreement. *Samson*, 547 U.S. at ___, 165 L. Ed. 2d at 259, 126 S. Ct. at 2199. Defendant argues that, because his search condition differs from the search condition considered in *Samson*, his expectation of privacy should not be similarly diminished.

Defendant's MSR agreement provides, "[y]ou shall consent to a search of your person, property, or residence under your control"[3] and "If [the rules of the agreement] are violated, parole or mandatory supervised release may be revoked."[4]

In comparison, the search condition of the petitioner in *Samson* mandated that he " 'shall agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day

---

[3]This condition has since been codified in section 3–3–7(a) of the Unified Code of Corrections, which provides, "The conditions of every parole and [MSR] are that the subject: *** (10) consent to a search of his or her person, property, or residence under his or her control." 730 ILCS 5/3–3–7(a)(10) (West 2006).

[4]This condition has since been codified in section 3–3–9(a) of the Unified Code of Corrections, which provides, "[i]f prior to expiration or termination of the term of parole or [MSR], a person violates a ***condition of parole ***, the Board may: (1) continue the existing term, with or without modifying or enlarging the conditions; or (2) parole or release the person to a half-way house; or (3) revoke the parole or [MSR] and reconfine the person ***." 730 ILCS 5/3–3–9(a) (West 2006).

or night, with or without a search warrant and with or without cause.' " *Samson*, 547 U.S. at ___, 165 L. Ed. 2d at 255, 126 S. Ct. at 2196, quoting Cal. Penal Code §3067(a) (West 2000). If the petitioner in *Samson* were to refuse to be subject to a search he would violate his parole and be subject to a return to physical custody of the department of corrections. Cal. Penal Code §3060 (West 2007).

We recognize the distinct wording in each search condition, but hold that the differences are of form, and not substance. In each state, the parolee is obligated to comply with the search demands of law enforcement officers or face potential revocation of parole. Despite defendant's protestations to the contrary, the legal and practical effect of his search condition is no different from that of the search condition at issue in *Samson*.

Defendant also maintains that, while California's search condition explicitly allowed for a search without cause by a police officer, his search condition does not and is, therefore, indicative of a greater expectation of privacy. In addressing this contention, we turn to *Moss*, where we considered a search condition identical to defendant's. In *Moss*, we held that the search condition puts the parolee "on notice that law enforcement officials may ask his consent to search his 'person, property, or residence ***' *** with or without reasonable suspicion." *Moss*, 217 Ill. 2d at 528. We further explained that this search condition has no "limitation on what government agent may perform that search or what purpose they may have." *Moss*, 217 Ill. 2d at 532. As such, we find no merit in defendant's argument that his search condition was in any way less "explicit" than that considered in *Samson*.

Search of a Residence

Defendant contends that the appellate court was correct in finding that, where the search of a parolee invades his home, "it weighs heavily in the balance that determines whether the search is reasonable and remains a significant, rather than minimal, intrusion on defendant's albeit diminished expectations of privacy." 364 Ill. App. 3d at 771. Defendant maintains that the special protection the United States Supreme Court and this court have historically afforded to searches

-12-

of residences should be factored in to any assessment of his diminished expectation of privacy.

Since *Samson*, many courts have held that there is no difference between the expectation of privacy a parolee has in his person and his residence, provided that the parolee has signed an agreement containing a search condition similar to defendant's search condition. These cases all implement the principle set forth in *Samson* that "a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." *Samson*, 547 U.S. at ___, 165 L. Ed. 2d at 260, 126 S. Ct. at 2200.

In *United States v. Stuckey*, No. 06 CR 339 (S.D.N.Y. August 16, 2006), the defendant was a parolee with a search condition permitting law enforcement to search his "person, residence, and property." The *Stuckey* court, relying on Samson, held that a suspicionless search of the defendant's residence was reasonable. The *Stuckey* court reasoned that, "if it generally could be said that a *free individual* has a greater expectations of privacy at home than in his person [citation], any differential must be considered *de minimis* for a *parolee* who is acutely aware of the search conditions attached to his liberty" and, moreover, "the state has at least as much of an interest in searching a parolee's residence as it does in searching his person." (Emphases in original.)

In *United States v. Lopez*, 474 F.3d 1208 (9th Cir. 2007), the defendant was a parolee with a search condition that put him on notice that his person, property, and residence were subject to search at any time. *Lopez*, 474 F.3d at 1209. Following *Samson*, the *Lopez* court held that the defendant, as a parolee, did not have an expectation of privacy in his residence that society would recognize as legitimate. *Lopez*, 474 F.3d at 1213. The *Lopez* court held:

> "[I]f *** a parolee has no expectation of privacy in his person, we reason that a parolee has no legitimate expectation of privacy in his residence either, at least when the parolee is present. Any other rule would diminish the protection to society given by the search condition of parole, permitting search at any time." *Lopez*, 474 F.3d at 1213.

See also *United States v. Perkins*, No. 05–CR–30137 (S.D. Ill. December 15, 2006) (holding that this court "would most likely hold that a search of a parolee's residence need not be supported by reasonable suspicion").

In the instant case, defendant signed and accepted a search condition requiring him to "consent to a search of your person, property, or *residence* under your control." (Emphasis added.) Like the defendants in *Stuckey* and *Lopez*, his status as a parolee, coupled with the plain language of his search condition, reduced his expectation of privacy in his residence to a level that society would not recognize as legitimate. Accordingly, the special protection normally afforded to an individual's home does not apply to him.

We are unpersuaded by defendant's arguments concerning the differences between the parole systems and search conditions of California and Illinois. Moreover, we find that any "special protection" afforded to defendant's residence was lost when he became a parolee and agreed to consent to a search of his residence in his MSR agreement. As such, we hold that the reasoning set forth in *Samson* controls our analysis of the instant case. "[T]he Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." *Samson*, 547 U.S. at ___, 165 L. Ed. 2d at 262, 126 S. Ct. at 2202.

In light of our decision today, we need not address the State's argument that the appellate court erred by disregarding the propriety of the search under the "special needs" doctrine set forth in *Griffin*. Also, because we reverse the judgment of the appellate court, we need not consider defendant's request for cross-relief.

CONCLUSION

For the foregoing reasons, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

-14-