**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 200448-U

Order filed March 8, 2023

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0448 Circuit No. 14-CF-145 |
| | ) | |
| DEMARCO TAMONT COMER, | ) ) | Honorable Paul P. Gilfillan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McDADE delivered the judgment of the court.
Justices Davenport and Peterson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The circuit court properly dismissed defendant's second-stage postconviction petition.

¶ 2    Defendant, Demarco Tamont Comer, appeals from the Peoria County circuit court's dismissal of his second-stage postconviction petition. Defendant argues he made a substantial showing that his trial and appellate counsel were ineffective for failing to challenge the constitutionality of his arrest. We affirm.

¶ 3                                I. BACKGROUND

¶ 4        Defendant was charged with residential burglary based on entry with the intent to commit theft (720 ILCS 5/19-3(a) (West 2014)), residential burglary based on entry with the intent to commit aggravated criminal sexual abuse (*id.*), two counts of aggravated criminal sexual abuse (*id.* § 11-1.60(c)(1)(i)), and criminal trespass to a residence (*id.* § 19-4(a)(2)). The case proceeded to a jury trial.

¶ 5        Tiffany Howard testified that on March 9, 2014, she was at the home of her sister, Kedsha Howard. Five children were sleeping on a mattress in an upstairs bedroom. At 6:30 a.m., Tiffany checked on the children and noticed "a black body" in the closet. Tiffany asked, "What the fuck is that in the closet?" She initially thought it was "Boog"—the father of her niece, E.E.—because he stayed in a room down the hall. Tiffany said, "Boog, what you doing in the room with these kids?" E.E. said, "That's not Boog, Tiffany. That is a stranger."

¶ 6        Tiffany turned on the lights and a man wearing a black hat and a black "fat coat like a puff coat" jumped out of the closet, pushed Tiffany onto the bed, and ran out of the bedroom. Since the lights were on, Tiffany was able to "get a real good look at [the intruder]." Tiffany testified that she could identify the intruder "to the day I die." The police were called to the apartment.

¶ 7        Detective Drew Flinn accompanied Tiffany to look for the intruder, but Tiffany did not identify anyone. Tiffany also went alone to look for the intruder. She described the intruder to neighbors as a man with "a gap in his mouth," black pants, black shoes, black hat, and a black "buff coat." Tiffany testified, "If you see a buff coat, you know—I know what I seen, yes, I did." After hearing the description of the intruder, one individual showed Tiffany where the man "stayed at." Tiffany did not observe the man exit the house, but she did see him stick his hand

out of the window. The police brought the man out of the house and Tiffany identified him as the intruder. Tiffany identified defendant in court as the intruder.

¶ 8        Detective Matt Rogers testified that he arrived at 615 Wayne Street on March 9, 2014, because Tiffany had observed defendant and followed him to that address.

¶ 9        Flinn testified that at 12:35 p.m., he was dispatched to 615 Wayne Street based on a call that the suspect was at that address. Defendant refused to exit the house. Upon entering the house, Flinn found defendant lying on the ground near two black coats. One coat was leather and the other was a "puffy, winter coat." Both were admitted at trial.

¶ 10       When officers removed defendant from the home, Tiffany pointed at defendant and told Rogers that she was 100% certain that defendant was the intruder. Flinn testified that Tiffany told him she had seen defendant prior to the incident and would be able to identify him again.

¶ 11       Y.W. testified that she was five years old. Y.W. was sleeping at Kedsha's home with the other children when a man entered the bedroom. The man was wearing black shoes, a black coat, and a black baseball hat. The man pulled down Y.W.'s pants and touched her "butt." The man entered the closet. When Tiffany entered the room, the man pushed her and ran away.

¶ 12       E.E. testified she was seven years old. E.E. was sleeping in a bed with Y.W. and the other children when a "bad man" entered the bedroom. The man was "rubbing on" two children. When Tiffany entered the room, the man jumped into the closet and then left. The man was wearing a black T-shirt, a little jacket, and a black hat with a bill. Kedsha testified that she did not know defendant and had not allowed defendant into her home.

¶ 13       The jury found defendant guilty of residential burglary based on the underlying offense of aggravated criminal sexual abuse, aggravated criminal sexual abuse, and criminal trespass to a residence. The court sentenced defendant to consecutive terms of imprisonment of 15 years for

3

residential burglary and 7 years for aggravated criminal sexual abuse. The court did not enter judgment on the criminal trespass conviction. Defendant appealed and we affirmed defendant's convictions and sentences. *People v. Comer*, 2017 IL App (3d) 140857-U.

¶ 14     Defendant filed a postconviction petition as a self-represented litigant wherein he argued trial counsel was ineffective for "not pursuing [his] 4th Amendment Right to be secure in his person against illegal searches and seizures." Additionally, he argued appellate counsel was ineffective "for focusing on unrelated issues to the circumstances of [his] arrest; especially when the matter could have been resolved on the face of the trial record."

¶ 15     Defendant filed a "Motion to Supplement and Amend Post-Conviction to Add Additional Information." Defendant alleged Tiffany told police that she had seen defendant at a liquor store and followed him. However, Tiffany testified at trial that an individual showed her where defendant lived. Additionally, defendant alleged officers entered his home without a search warrant. The court docketed defendant's petition for second-stage proceedings and appointed counsel.

¶ 16     The State filed a motion to dismiss arguing defendant failed to sufficiently allege ineffective assistance of counsel since there was no evidence obtained because of the arrest other than Tiffany's identification of defendant. Postconviction counsel filed a supplemental postconviction petition and a Rule 651(c) certificate. Postconviction counsel filed a response to the State's motion arguing trial counsel was ineffective for not filing a motion to suppress evidence obtained from defendant's unconstitutional arrest. The court granted the State's motion. Defendant appeals.

¶ 17                                    II. ANALYSIS

4

¶ 18    Defendant argues he made a substantial showing that trial and appellate counsel were ineffective for failing to challenge the constitutionality of his arrest. Specifically, trial counsel provided deficient performance in failing to challenge the warrantless entry of defendant's home and seek suppression of Tiffany's at-arrest and in-court identifications of defendant as the intruder. This deficiency prejudiced defendant in that the motion to suppress would have been granted and would have led to a different result at trial. Further, appellate counsel was ineffective for failing to challenge trial counsel's failure to file a motion to suppress.

¶ 19    The Post-Conviction Hearing Act provides a three-stage process wherein a prisoner may file a petition asserting his conviction was obtained through a substantial denial of his constitutional rights. 725 ILCS 5/122-1 *et seq.* (West 2016). At the second stage of a postconviction proceeding, defendant must make "a substantial showing of a constitutional violation." *People v. Domagala*, 2013 IL 113688, ¶ 35. This "substantial showing" is a measure of the legal sufficiency of the petition. *Id.* "At the second stage of proceedings, all well-pleaded facts that are not positively rebutted by the trial record are to be taken as true, and, in the event the circuit court dismisses the petition at that stage, we generally review the circuit court's decision using a *de novo* standard." *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006).

¶ 20    "[W]here an ineffectiveness claim is based on counsel's failure to file a suppression motion, *** defendant must demonstrate that the unargued suppression motion is meritorious, and that a reasonable probability exists that the trial outcome would have been different had the evidence been suppressed." *People v. Henderson*, 2013 IL 114040, ¶ 15. "A 'reasonable probability' is defined as 'a probability sufficient to undermine confidence in the outcome.' " *People v. Simpson*, 2015 IL 116512, ¶ 35 (quoting *Strickland v. Washington*, 466 U.S. 668, 694

5

(1984)). "[F]ailure to satisfy either prong precludes a finding of ineffective assistance of counsel." *People v. Patterson*, 192 Ill. 2d 93, 107 (2000).

¶ 21 The fourth amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV; *People v. Wilson*, 228 Ill. 2d 35, 40 (2008). The fourth amendment applies to the states through the due process clause of the fourteenth amendment. *Wilson*, 228 Ill. 2d at 40. "The chief evil against which the fourth amendment to the United States Constitution is directed is the physical entry of the home." *People v. Davis*, 398 Ill. App. 3d 940, 948 (2010). A warrantless search or seizure inside a home is presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 585 (1980). "[P]olice officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home." *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002).

¶ 22 Here, officers did not have a warrant to enter defendant's home. Additionally, the State concedes that "[t]here may be merit to defendant's contentions that there was a warrantless entry to defendant's residence without any exigent circumstances," and notes that "[a]n evidentiary hearing would clear up the circumstances regarding the entry into defendant's residence." In the absence of such a hearing or other support for the existence of exigent circumstances justifying a warrantless search, it is likely that defendant's unargued motion to suppress would have resulted in the suppression of the two black coats and Tiffany's identification of defendant at the time of arrest. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961) (all evidence obtained by unconstitutional searches and seizures is inadmissible). Therefore, defendant made a substantial showing that trial counsel was deficient in failing to file a motion to suppress.

6

¶ 23       Defendant also argues that Tiffany's in-court identification was suppressible as fruit of the poisonous tree. To determine whether an in-court identification is independent of an unconstitutional pretrial identification, we consider (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, (5) the length of time between the crime and the confrontation, and (6) any acquaintance with the suspect prior to the crime. *People v. McTush*, 81 Ill. 2d 513, 521 (1980).

¶ 24       Tiffany observed defendant in the bedroom of Kedsha's house. She turned on a light and was able to "get a real good look at [defendant]." Tiffany was only focused on defendant because she was trying to determine who was in the bedroom. Tiffany described defendant as a man with "a gap in his mouth" who was wearing a black hat, and a black puffy coat. Based on Tiffany's description of defendant to neighbors, she located defendant's residence. When officers brought defendant out of the home, Tiffany identified him as the intruder and told Rogers she was 100% certain. Tiffany identified defendant on the same day the incident occurred. Defendant was the only man Tiffany identified as the intruder after she searched for him both with officers and on her own. Tiffany identified defendant at her first opportunity to do so. While Tiffany did not know defendant, she informed Flinn that she had seen defendant before the encounter and was certain she could identify him again. The State has clearly shown that, based on the totality of the circumstances, Tiffany identified defendant solely based on her memory of the events at the time of the crime. See *id.* at 520. Thus, Tiffany's in-court identification was independent of the unconstitutional pretrial identification and would not be suppressed and excluded from evidence at trial.

7

¶ 25        Despite trial counsel's deficient performance in failing to file a motion to suppress, defendant's petition did not make a substantial showing that he suffered prejudice as a result of this performance. Even if the black coat and Tiffany's at-arrest identification of defendant had been suppressed the outcome at trial would remain the same. As discussed above, at trial Tiffany clearly and conclusively identified defendant as the intruder and one eyewitness account is sufficient to support a conviction. See *People v. Lewis*, 165 Ill. 2d 305, 356 (1995). Accordingly, defendant's claim of ineffective assistance of trial and appellate counsel fail. See *Patterson*, 192 Ill. 2d at 107; *People v. Easley*, 192 Ill. 2d 307, 329 (2000) (defendant suffers no prejudice from appellate counsel's failure to raise issues lacking merit).

¶ 26                                III. CONCLUSION

¶ 27        The judgment of the circuit court of Peoria County is affirmed.

¶ 28        Affirmed.