2020 IL App (1st) 172987

SIXTH DIVISION
MAY 29, 2020

No. 1-17-2987

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 18019 |
| | ) | |
| RODNEY JOHNSON, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice Harris concurred in the judgment and opinion.

**OPINION**

¶ 1     Following a bench trial in the circuit court of Cook County, the defendant-appellant, Rodney Johnson, was convicted of unlawful use of a weapon by a felon, possession of a controlled substance, possession of cocaine, and possession of cannabis. He was sentenced to seven years' imprisonment. On appeal, the defendant contends that: (1) the trial court erred in denying his motion to suppress evidence; (2) he received ineffective assistance of counsel; (3) the search of his residence violated the Illinois Constitution; and (4) the State failed to prove him guilty of possession of a controlled substance. For the following reasons, we affirm the judgment of the circuit court of Cook County, reduce the defendant's conviction for possession of a controlled substance to the lesser-included offense under the Illinois Controlled Substances Act (720 ILCS 570/100 *et seq.* (West 2016)), and remand the case for resentencing.

¶ 2                                    BACKGROUND

¶ 3      The defendant was arrested and charged with eight different gun and narcotic offenses after a gun, ammunition, and numerous drugs were found inside his residence. At the time, the defendant was a parolee who was out of prison on mandatory supervised release (MSR) for a prior felony conviction.[1] Before being released on MSR, the defendant signed a "Parole or Mandatory Supervised Release Agreement" (MSR agreement). The MSR agreement provided "Rules of Conduct" that governed the defendant's MSR. The relevant rule of conduct stated: "You shall consent to a search of your person, property, or residence under your control."

¶ 4      Prior to the commencement of trial, the defendant orally moved to suppress evidence, specifically the weapons and drugs recovered from the residence where he was arrested. A hearing on the defendant's motion followed.

¶ 5      During the hearing, the defendant called Tina Williams, a parole agent with the Illinois Department of Corrections. Williams testified that she was assigned to do a parole compliance check on the defendant to make sure he was in compliance with his MSR agreement. She testified that "probably two more" parole agents were with her, as well as several police officers, although she could not remember exactly how many. The defendant claimed that 12 parole agents and police officers participated in the search

¶ 6      Williams testified that she and the others all arrived at the defendant's residence and he opened the door for them. The main purpose of the parole compliance check was to verify that the defendant was in compliance with his parole, including verifying that he actually lived at the residence by "looking for" "first class mail" and "property that belonged" to the defendant. The

---

[1]The record does not identify the defendant's prior felony conviction.

following colloquy ensued during the hearing:

"[DEFENSE COUNSEL]: And where normally do you look for these kinds of things?

[WILLIAMS]: It depends on how much access that the parolee says he has to [the] apartment. So we would ask the parolee first.

[DEFENSE COUNSEL]: Did you ask [the defendant] if he had any mail to show you?

[WILLIAMS]: Yes.

[DEFENSE COUNSEL]: What did he say?

[WILLIAMS]: In the beginning he didn't tell the truth. He said he had some first, but he couldn't find it.

[DEFENSE COUNSEL]: So he said I have some but I couldn't find it?

[WILLIAMS]: No, he tried to find some in a room that was not his room.

[DEFENSE COUNSEL]: Had you ever been to this apartment before?

[WILLIAMS]: No.

[DEFENSE COUNSEL]: Ha[d] you ever met [the defendant] before?

[WILLIAMS]: No.

[DEFENSE COUNSEL]: So you, walking in, you had no

firsthand knowledge about who lived in which room, correct?

[WILLIAMS]: Exactly.

[DEFENSE COUNSEL]: So how many rooms were in this apartment?

[WILLIAMS]: Four.

[DEFENSE COUNSEL]: Four bedrooms or four rooms total?

[WILLIAMS]: Four bedrooms.

[DEFENSE COUNSEL]: And did you go into any of those bedrooms?

[WILLIAMS]: Yes.

[DEFENSE COUNSEL]: How many of those bedrooms did you go into?

[WILLIAMS]: Well, I looked in all the rooms, but as far as *** to check that was done [*sic*], it was in two."

¶ 7    Williams then explained that the defendant took her and the other officers into a bedroom that contained "female belongings." They searched the room but did not find any mail addressed to the defendant. Williams asked the defendant which room was his. The defendant continued to claim that the room they were in, with the female belongings, was his room.[2]

¶ 8    When Williams told the defendant that she did not believe him because they could not find any of his belongings in that room, he told her to ask his uncle, who was letting him stay there.

---

[2]Williams testified that, at some point during the parole compliance check, the defendant also identified a small storage room as his bedroom.

Williams requested that the uncle come to the bedroom area, and he identified another bedroom which was locked, as the defendant's room.

¶ 9  One of the police officers then broke the lock, opened the bedroom door, and entered. Inside the locked bedroom, the police officers found a gun, ammunition, and numerous drugs. The defendant was subsequently arrested.

¶ 10  When defense counsel asked Williams if she had a search warrant to search the defendant's residence, she responded: "No, we [weren't] searching the house."

¶ 11  On cross-examination, Williams testified that when she first arrived at the defendant's residence with the other officers, she knocked on the front door but no one answered. She called the defendant's cell phone. The defendant answered his phone and said he would be right down, but it took him six minutes to open the front door.

¶ 12  The defendant testified that when Williams came to his residence to complete the parole compliance check, there were four other parole agents and seven police officers with her. As soon as he opened the front door, all of the parole agents and police officers immediately entered inside the residence; they "grabbed" him and put him in handcuffs. The parole agents and police officers then "searched the whole house. *** They [entered] rooms, look[ed] under mattresses, look[ed] in closets." He saw one police officer pull out a pocket knife and use it to "jimmie[ ]" a lock on one of the bedroom doors.

¶ 13  On cross-examination, the State asked the defendant about the MSR agreement:

> "[THE STATE]: And one of those rules on that document
> says that your property, your person and your residence can be
> searched at any time?

[THE DEFENDANT]: Well, actually the document said I have to permit the agent to search it, meaning he needs my consent.

THE COURT: Ask him questions of fact. Not questions of law.

[THE STATE]: Okay. And you signed that agreement when you went on parole?

[THE DEFENDANT]: Yes. You have to sign it to get your parole.

[THE STATE]: Now, when the officers came and knocked on your door, you let them into your residence?

[THE DEFENDANT]: I didn't let them in. I answered the door and they forced themselves in.

\*\*\*

[THE STATE]: After the officers enter[ed] your bedroom, they found drugs in your room, correct?

[THE DEFENDANT]: That wasn't my bedroom.

[THE STATE]: In the middle of [the] bedroom, they found—

[THE DEFENDANT]: I [didn't] know what they found until I got charged with it.

[THE STATE]: When they were—when they jimmied into that bedroom, some of your belongings were in there, correct?

[THE DEFENDANT]: From my understanding they told me they found my ID in the room."

¶ 14     At that point in the defendant's testimony, the court stated:

"I want to know if he has standing. That's one thing that is coming up and that's occurring to me is does he have standing. So I'd like to know if he's acknowledging which bedroom certain things were searched and certain things were found. So let's find out if he has standing to bring a motion."

The State continued questioning the defendant:

"[THE STATE]: Now, is your bedroom the second bedroom that was locked?

[THE DEFENDANT]: Actually, they asked me where I sleep at. I sleep on the couch. Then they asked me where were my clothes. I [pointed to] the room that they referred to as the storage room.

[THE STATE]: Was any of your belongings or property in the locked bedroom?

[THE DEFENDANT]: No, it was just—they said it was my ID and a piece of mail and my cell phone, and that was in my pants pocket.

[THE STATE]: Were the drugs that were recovered in that room your drugs?

[THE DEFENDANT]: No, they w[ere] not.

[THE STATE]: Was the gun in that room [yours]?

[THE DEFENDANT]: No, it was not.

[THE STATE]: Was the ammo recovered in that room yours?

[THE DEFENDANT]: No, it was not."

¶ 15    The defendant then rested on his motion to suppress evidence. He argued that the trial court should grant his motion "due to the totality of the circumstances that the parole compliance check extended beyond its scope and purpose [and] that the Chicago Police Department were the ones acting as investigators at this point when they jimmied open the door."

¶ 16    The trial court denied the defendant's motion, stating:

"Two problems here, parolees are in a totally different situation as far as [f]ourth [a]mendment claims are concerned. They do not have the same rights under the [f]ourth [a]mendment to assert such claims than defendants who are not on parole.

Number two, he is claiming that whatever was found was not in that particular room or the Government [*sic*] says was found. So he doesn't have standing to complain about where the other thing was found. He has nothing to do. Those are trial questions. Questions of fact for the trial. So for those reasons, the motion to suppress evidence is respectfully denied."

¶ 17    A bench trial then commenced. The parties adopted the defendant's and Williams' testimonies from the suppression hearing.

¶ 18    Officer Daniel Pacelli testified that he assisted Williams with the defendant's parole compliance check. Officer Pacelli explained that the defendant's residence had four bedrooms and it appeared that multiple people lived there. The second bedroom was locked. The defendant did

not indicate that the locked bedroom was his, but another police officer was nonetheless able to "manipulate the door to open it." Officer Pacelli looked inside the room and saw drugs in plain view.

¶ 19     Officer Pacelli, Williams, and others entered the locked bedroom. Williams called the defendant's cell phone, and his cell phone began ringing inside the room. The defendant's mail, ID, and Social Security card were also found inside the room. Police officers further discovered a gun, ammunition, more drugs, and drug packaging equipment.

¶ 20     The State asked Officer Pacelli if he heard the defendant say anything while he and the other police officers were searching the locked bedroom:

> "[OFFICER PACELLI]: Yes.
>
> [THE STATE]: What did you hear the defendant say?
>
> [OFFICER PACELLI]: After [a parole agent] recovered some narcotics, [that agent] yelled out, 'I recovered more narcotics.' At that time the defendant yelled out, 'It's only weed and C.'
>
> [THE STATE]: And at that time was the defendant placed into custody?
>
> [OFFICER PACELLI]: The defendant was already in custody.
>
> [THE STATE]: When was the defendant placed in to [*sic*] custody?
>
> [OFFICER PACELLI]: After I observed in plain view— when I was doing a safety check in the room—the cocaine."

¶ 21    The State then rested. The parties stipulated that the narcotics recovered from the locked bedroom were inventoried and sent to the Illinois State Police Crime Lab for testing and analysis. The parties further stipulated that those items tested positive for 12.6 grams of cocaine, 220.1 grams of cannabis, and 103.7 grams of hydrocodone.

¶ 22    The defendant moved for a directed finding. The court granted the motion regarding the intent to deliver charges but denied the motion with respect to the lesser-included offenses of simple possession.

¶ 23    The trial court then found the defendant guilty of unlawful use of a weapon by a felon, possession of a controlled substance,[3] possession of cocaine, and possession of cannabis.

¶ 24    Before sentencing, the trial court permitted the defendant to make a statement. He complained to the trial court that his defense counsel had failed to visit him in jail and discuss trial strategy with him. He further argued that she failed to show that he was not the only person who lived at the residence and failed to show that the police conducted an illegal search. He continued to claim that the locked bedroom was not his and that he never allowed the police to search his residence.

¶ 25    Citing to *People v. Krankel*, 102 Ill. 2d 181 (1984), the trial court requested a response from defense counsel. Defense counsel conceded that she had not visited the defendant in jail, but she did discuss the case notes with prior defense counsel, who had visited the defendant in jail and discussed discovery with him. Defense counsel conducted her own investigation and determined that no other witnesses could address the issues of guilt or innocence. Specifically, defense counsel explained that she had spoken with other family members who lived at the residence and learned

---

[3]The defendant's conviction for possession of a controlled substance was for possession of 200 grams or more of hydrocodone.

from them that no one was present during the search who could testify as an eyewitness. The trial court asked defense counsel if she thought "as a matter of trial strategy that it would backfire and not be good for the defense" to call those witnesses, and counsel agreed with that assessment. Defense counsel also reminded the court that she had filed and fully litigated a motion to suppress evidence.

¶ 26    The trial court determined that defense counsel was not ineffective and that the defendant's complaints were "more about form as opposed to substance."

¶ 27    The trial court then sentenced the defendant to concurrent sentences of seven years for unlawful possession of a weapon by a felon; seven years for possession of a controlled substance; three years for possession of cocaine; and three years for possession of cannabis. This appeal followed.

¶ 28                                    ANALYSIS

¶ 29    We note that we have jurisdiction to review the trial court's judgment, as the defendant filed a timely notice of appeal. Ill. S. Ct. R. 603 (eff. Feb. 6, 2013); R. 606 (eff. July 1, 2017).

¶ 30    On appeal, the defendant presents the following issues: (1) whether the trial court erred in denying the motion to suppress evidence; (2) whether the defendant received ineffective assistance of counsel when his defense counsel failed to reopen the motion to suppress evidence during the trial; (3) whether the search of the defendant's residence violated the search and seizure clause of the Illinois Constitution; and (4) whether the State failed to prove the defendant guilty beyond a reasonable doubt of possession of a controlled substance. We take each argument in turn.

¶ 31    The defendant first argues that the trial court erred in denying the motion to suppress evidence because the search of his residence violated his rights under the fourth amendment. He claims that he had a reasonable expectation of privacy in the locked bedroom "that police entered

by physically manipulating the lock without any consent." He concedes that parolees have a diminished expectation of privacy but avers that "this expectation of privacy is not extinguished entirely." The defendant claims that the MSR agreement requiring him to consent to searches did not constitute his consent of all prospective searches. He accordingly claims that his motion to suppress the gun, ammunition, and drugs found during the search should have been granted.

¶ 32    The fourth amendment of the United States Constitution protects individuals from unreasonable searches and seizures. U.S. Const., amend. IV. Generally, the fourth amendment requires the government to possess a warrant supported by probable cause for a search to be considered reasonable. *People v. Wilson*, 228 Ill. 2d 35, 40 (2008). However, the requirement for a warrant has been held unnecessary in cases involving parolees when the search is deemed reasonable. *Id.*

¶ 33    In reviewing a trial court's ruling on a motion to suppress evidence, we apply the two-part standard of review adopted by the United States Supreme Court in *Ornelas v. United States*, 517 U.S. 690, 699 (1996). *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). Under this standard, a trial court's findings of fact should be reviewed only for clear error. *Id.* "In other words, we give great deference to the trial court's factual findings, and we will reverse those findings only if they are against the manifest weight of the evidence." *Id*. Yet, a reviewing court remains free to undertake its own legal assessment of the facts and may draw its own conclusions when deciding what relief should be granted. *Id.* Therefore, we review *de novo* the trial court's ultimate legal ruling as to whether suppression is warranted. *Id.*

¶ 34    In this case, the trial court denied the defendant's motion to suppress evidence for two reasons: (1) the defendant, as a parolee, "do[es] not have the same rights under the Fourth Amendment" as non-parolees; and (2) the defendant did not have standing to challenge any

evidence found inside the locked bedroom because he claimed that it was not his bedroom. However, as the State acknowledges, courts "no longer use the rubric of 'standing' when analyzing fourth amendment claims." *People v. Johnson*, 237 Ill. 2d 81, 89 (2010); see also *People v. McCauley*, 2018 IL App (1st) 160812, ¶ 29 (whether the defendant has "standing" to raise a fourth amendment claim is the wrong question for the trial court to ask). "Instead, the relevant inquiry is whether the person claiming the protections of the fourth amendment had a legitimate expectation of privacy in the place searched." *Johnson*, 237 Ill. 2d at 90.

¶ 35     It has been established by our supreme court that parolees who have signed an MSR agreement that has a search condition, such as that in the instant case, have a reduced expectation of privacy such that standard fourth amendment protections do not apply to them. *Wilson*, 228 Ill. 2d at 52. In *Wilson*, parole agents and police officers visited the defendant's residence after receiving a tip that the defendant, who was a parolee, had possession of drugs and weapons. *Id.* at 38. The defendant's relative gave the parole agents and police officers permission to enter the residence. *Id.* Once inside, they saw the defendant emerge from a room that he said was his bedroom. *Id.* The police officers then searched the defendant's bedroom and found drugs. *Id.* The parole agent testified that he believed he did not need a warrant or consent to search the defendant's bedroom because the "defendant's MSR agreement constituted [the] defendant's consent to any searches of his person, property, or residence." *Id.* at 39. The defendant moved to suppress evidence on the basis that the search of his bedroom violated his rights under the fourth amendment. *Id.* at 37. The trial court denied the motion, "finding that [the] defendant consented to the search when he signed his MSR agreement." *Id.* at 39.

¶ 36     The Illinois Supreme Court affirmed the trial court's denial of the defendant's motion to suppress evidence. *Id.* at 52. The supreme court acknowledged that the search of the defendant's

room was nonconsensual, stating: "[The police officers] did not ask for consent before ordering the search of [the] defendant's bedroom. Moreover, [the] defendant's search condition, which mandated that he 'shall consent to a search,' did not constitute prospective consent." *Id*. at 39. Nonetheless, the supreme court noted that parolees remain in the legal custody of the Department of Corrections for the duration of their parole; and that the search condition contained in the MSR agreement puts parolees on notice that law enforcement officials may search their person, property, or residence at any time, with or without reasonable suspicion. *Id.* at 48-50.

¶ 37    In its holding, our supreme court focused on parolees' diminished expectation of privacy and the "salient government interest in preventing recidivism and protecting society from future crimes." *Id.* at 41. The court stated: "[W]e find that any 'special protection' afforded to [the] defendant's residence was lost when he became a parolee and agreed [in his MSR agreement] to consent to a search of his residence." *Id.* at 52. Citing to *Samson v. California*, 547 U.S. 843, 856-58 (2006), a United States Supreme Court case, the court explained that if searches of parolees required suspicion, parolees would have a greater opportunity to anticipate searches and conceal criminality, which would undermine the government's ability to effectively supervise parolees. *Wilson*, 228 Ill. 2d at 45-46. The Illinois Supreme Court confirmed that the fourth amendment does not prohibit a police officer from conducting a suspicionless search of a parolee, his property, or his residence. *Id.* at 52.

¶ 38    As the facts of the instant case are analogous to *Wilson*, we are bound to follow our supreme court. The defendant in this case was a parolee out on MSR at the time of the search. Consequently, he was not afforded the usual protections from warrantless and suspicionless searches. The defendant argues that while the supreme court in *Wilson* held that parolees have a *diminished* expectation of privacy, it did not hold that parolees have *no* expectation of privacy whatsoever.

This is true. Yet, the supreme court nonetheless held that a parolee's expectation of privacy is *so diminished* that a warrantless and suspicionless search of a parolee's residence is permissible.

¶ 39    It is irrelevant that neither the defendant nor anyone else in the residence consented to a search; the defendant signed an MSR agreement that put him on notice that his residence could be searched at any time. Even though the defendant disclaimed the locked bedroom as his, the circumstantial evidence establishes that the locked bedroom was, indeed, the defendant's room, and thereby under his control. Parole agent Williams testified that she called the defendant's cell phone upon arrival at the residence. The defendant answered, and after a delay of six minutes, he opened the door to the residence. The defendant's cell phone was later found in the pocket of his pants inside the locked bedroom. Further, his mail, ID, and Social Security card were found inside the room. The police officers did not find belongings that were the defendant's anywhere else in the residence. His uncle identified the locked bedroom as the defendant's room.[4] The totality of the circumstantial evidence establishes that the room was the defendant's. Accordingly, the gun, ammunition, and drugs found inside the room were properly ascribed to the defendant. The trial court therefore did not err in denying the defendant's motion to suppress evidence.

¶ 40    Next, the defendant argues that he received ineffective assistance of counsel when his defense counsel did not reopen the motion to suppress evidence during the trial. He claims that Officer Pacelli's testimony at trial established that the police officers opened the locked bedroom and searched it even though the defendant did not confirm that it was his room. The defendant further argues that Officer Pacelli's testimony that the defendant's cell phone was found inside the

---

[4]The defendant makes much of the fact that police officers searched other rooms in the residence, which he shared with relatives. He claims the search also violated *their* rights under the fourth amendment as non-parolees. The defendant cannot make such an argument on behalf of others. Further, nothing was recovered from the other rooms and no one else was charged.

locked bedroom is further proof of his expectation of right to privacy. The defendant accordingly contends that his defense counsel should have reopened the motion to suppress evidence during the trial.

¶ 41   Claims of ineffective assistance of counsel are reviewed through a two-part test that was announced by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted by our supreme court. *People v. Burrows*, 148 Ill. 2d 196, 232 (1992). To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate both that (1) counsel's performance was objectively unreasonable under prevailing professional norms and (2) the defendant was prejudiced. *People v. Veach*, 2017 IL 120649, ¶ 30 (citing *People v. Domagala*, 2013 IL 113688, ¶ 36). Prejudice is a reasonable probability of a different result of the proceeding absent counsel's deficiency, and a reasonable probability is probability sufficient to undermine confidence in the outcome. *Id.* When a reviewing court addresses an ineffective assistance of counsel claim, it need not apply the two-part test in numerical order. *Burrows*, 148 Ill. 2d at 232. We review claims of ineffective assistance of counsel *de novo*. *People v. Demus*, 2016 IL App (1st) 140420, ¶ 21.

¶ 42   We need not address whether defense counsel's performance was objectively unreasonable because the defendant cannot demonstrate prejudice. As discussed *supra*, the search of the locked bedroom did not violate the defendant's rights under the fourth amendment that would warrant suppressing the weapons and drugs found inside the room. Officer Pacelli's testimony, that the officers opened the locked bedroom door even though the defendant did not indicate that it was his room and that the defendant's cell phone was found inside the room, does not change our fourth amendment analysis.

¶ 43    It does, however, highlight the defendant's attempt to have it both ways. If, as he claims, the room was not his, then he had no reasonable expectation of privacy regarding the contents of the room. On the other hand, if, as the circumstantial evidence shows, the room was his, then, as *Wilson* suggests, he had a reduced expectation of privacy and did not enjoy the full breadth of fourth amendment protections. Consequently, even had defense counsel reopened the motion to suppress evidence, it cannot be said that the trial court would have granted it and that it would have changed the outcome of the trial. Thus, the defendant was not prejudiced. See *People v. Miramontes*, 2018 IL App (1st) 160410, ¶ 19 (a defendant is prejudiced only when there is a reasonable probability that there would have been a different outcome in the defendant's trial). Accordingly, we find that defense counsel did not render ineffective assistance.

¶ 44    The defendant next argues that the search of his residence violated the search and seizure clause of the Illinois Constitution, claiming that the Illinois Constitution generally provides more protections than the United States Constitution. He notes that the Illinois Supreme Court has never addressed a parolee's privacy rights under the Illinois Constitution and encourages us to engage in such an analysis.

¶ 45    As already discussed, the fourth amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const., amend. IV. Likewise, under our state constitution, "[t]he people shall have the right to be secure in their persons, houses, papers[,] and other possessions against unreasonable searches[ ] [and] seizures." Ill. Const. 1970, art. I, § 6. We interpret article I, section 6, in "limited lockstep" with the fourth amendment. *People v. Caballes*, 221 Ill. 2d 282, 313 (2006). "Under this approach, [Illinois courts] will 'look first to the federal constitution, and only if federal law provides no relief [will they] turn to the state constitution to determine whether a

specific criterion—for example, unique state history or state experience—justifies departure from federal precedent.' ” *Id.* at 309 (quoting Lawrence Friedman, *The Constitutional Value of Dialogue and the New Judicial Federalism*, 28 Hastings Const. L.Q. 93, 104 (Fall 2000)). It is well settled that, under the limited lockstep doctrine, the search and seizure clause of the Illinois Constitution is *identical* to the search and seizure clause of the United States Constitution. *Id.* at 335.

¶ 46     As our supreme court explicitly held in *Caballes* that our state constitution does not provide greater protections than the fourth amendment, and as our supreme court in *Wilson* established that police officers can search parolees' homes without any suspicion under the fourth amendment, it necessarily follows that suspicionless searches of parolees' homes do not violate the Illinois Constitution. Ergo, the defendant's argument that the search of his residence violated our state constitution fails.

¶ 47     Nonetheless, the defendant argues that, in *Caballes*, our supreme court "actually reaffirmed Illinois' departure from the traditional lockstep doctrine." The defendant's argument on this point is equally unavailing and merely confirms that Illinois courts follow the *limited* lockstep doctrine, which we have already discussed.

¶ 48     Finally, the defendant argues that the State failed to prove him guilty of possession of a controlled substance. He argues that his conviction was for possessing 200 grams or more of hydrocodone, but the parties stipulated that the hydrocodone recovered from the locked bedroom weighed *only 103.7 grams*. He accordingly asks us to vacate his conviction and sentence for possession of a controlled substance.

¶ 49     The State has the burden of proving, beyond a reasonable doubt, each element of an offense. *People v. Gray*, 2017 IL 120958, ¶ 35. When a defendant challenges the sufficiency of the evidence, the proper standard of review is whether, after viewing the evidence in the light most

favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

¶ 50    A stipulation is conclusive as to all matters included in it, and no proof of stipulated facts is necessary because a stipulation is a substitution for proof that dispenses with the need for evidence. *People v. Woods*, 214 Ill. 2d 455, 469 (2005). By stipulating that the hydrocodone found inside the locked bedroom weighed 103.7 grams, the State failed to prove the defendant guilty of possession of 200 grams of hydrocodone. See *People v. Wilkerson*, 2016 IL App (1st) 151913, ¶ 53 (the greater the amount of illegal substance possessed by a defendant, the higher the offense, and so the State must prove beyond a reasonable doubt the weight of the substance containing the drug). Further, the State concedes that the defendant's conviction should be reduced to the lesser-included offense under the Illinois Controlled Substances Act (Act).

¶ 51    The defendant asks us to vacate his conviction entirely instead of reducing it because there is "no lesser[-]included offense or other catch-all violation for the simple possession of hydrocodone." This is incorrect. Section 402(c) of the Act is a catch-all clause that provides: "Any person who violates this Section *with regard to an amount of a controlled substance *** not set forth in subsection (a) or (d)* is guilty of a Class 4 felony." (Emphasis added.) 720 ILCS 570/402(c) (West 2016). The defendant was convicted under subsection (a), which provides that a person violates the Act for possessing 200 grams or more of hydrocodone.[5][6] *Id.* § 402(a)(11). But because the parties stipulated that the substance recovered from the locked bedroom tested positive for 103.7 grams of hydrocodone, the State instead proved the defendant guilty of possessing a

---

[5]Specifically, subsection (a)(11) provides that a person violates section 402 for possession of 200 grams of a substance classified as a Schedule II narcotic (720 ILCS 570/402(a)(11) (West 2016)), and section 206(b)(1)(x) of the Act lists hydrocodone as a Schedule II narcotic (*id.* § 206(b)(1)(x)).

[6]Subsection (d) pertains to anabolic steroids, which is irrelevant. 720 ILCS 570/402(d) (West 2016).

controlled substance pursuant to section 402(c) of the Act.

¶ 52    Illinois Supreme Court Rule 615(b)(3) (eff. Jan. 1, 1967) allows a reviewing court to reduce the severity of the offense of which a defendant was convicted. We accordingly reduce the degree of the defendant's conviction from possession of 200 grams or more of hydrocodone pursuant to section 402(a) to possession of a controlled substance pursuant to section 402(c). An offense under section 402(c) is a Class 4 felony that carries with it a prison term of one to three years. The defendant was sentenced to seven years for the greater offense. Thus, we remand this case to the trial court for resentencing of the defendant for conviction for possession of a controlled substance under section 402(c), as discussed herein.

¶ 53                                    CONCLUSION

¶ 54    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County but reduce the defendant's conviction for possession of a controlled substance to the lesser-included offense and vacate the defendant's sentence; we remand the case for new sentencing on the defendant's conviction for possession of a controlled substance.

¶ 55    Affirmed in part and vacated in part; cause remanded.

---

**No. 1-17-2987**

---

| | |
|---|---|
| **Cite as:** | *People v. Johnson*, 2020 IL App (1st) 172987 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 16-CR-18019; the Hon. James B. Linn, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Eric E. Castañeda, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, David H. Iskowich, and David G. Myers, Assistant State's Attorneys, of counsel), for the People. |

---