2025 IL App (4th) 240220

NO. 4-24-0220

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 25, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| TERRY LEE PYLES, | ) | No. 22CF939 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | William A. Yoder, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court, with opinion.
Presiding Justice Harris and Justice Vancil concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant Terry Lee Pyles appeals from his conviction and 35-year sentence for methamphetamine trafficking. Defendant argues that his conviction must be reversed outright because the State's evidence was obtained through an illegal search. We disagree and affirm.

¶ 2 I. BACKGROUND

¶ 3 A. Parole Search Conditions

¶ 4 Under the Unified Code of Corrections (Code), a term of mandatory supervised release (MSR) is imposed on defendants when they complete a term of imprisonment in the Illinois Department of Corrections (Department), with the maximum length of the MSR term depending on the offense. 730 ILCS 5/5-4.5-15(c), 5-8-1(d) (West 2022); see *Round v. Lamb*, 2017 IL 122271, ¶ 16 ("[T]he MSR term is included in the sentence as a matter of law ***."). MSR refers

to what was traditionally known as parole, and courts still use the term "parolee" for a person on MSR. See, *e.g.*, *People v. Wilson*, 228 Ill. 2d 35, 37 n.1 (2008). The Department is responsible for supervising parolees after release, and they are considered to be in the Department's custody despite not being imprisoned. 730 ILCS 5/3-14-2(a) (West 2022); see *People v. Beachem*, 229 Ill. 2d 237, 245 (2008) (distinguishing between constructive custody of parolees and penal or physical custody).

¶ 5 However, conditions of MSR are set not by the Department, but by the independent Prisoner Review Board (Board). 730 ILCS 5/3-3-1(a)(5), 3-14-2 (West 2022). Section 3-3-7 of the Code provides for certain mandatory "conditions of every parole and [MSR]," with some of those conditions applying only when the defendant was convicted of certain offenses; the Board may also impose additional, discretionary conditions that it "deems necessary to assist the subject in leading a law-abiding life" "after making an individualized assessment" of the parolee. 730 ILCS 5/3-3-7(a), (b), (b-1) (West Supp. 2023). The Board's discretion to impose conditions of MSR does not extend to mandatory conditions. See *Cordrey v. Prisoner Review Board*, 2014 IL 117155, ¶ 21 ("Although the Prisoner Review Board has wide discretion, the legislature has mandated that certain sex offenders are required to wear an approved electronic monitoring device."); 730 ILCS 5/3-3-9(a) (West 2022) (referring to "a condition set by the Prisoner Review Board *or* a condition of *** [MSR] under Section 3-3-7" (emphasis added)).

¶ 6 When a person violates a condition of his MSR, the Board may revoke MSR and reimprison him for a term computed pursuant to the Code. 730 ILCS 5/3-3-9(a)(3) (West 2022). Prior to the expiration of an MSR term, when the Board "determines that [the parolee] is likely to remain at liberty without committing another offense," the Board "may enter an order releasing and discharging [him] from" MSR. *Id.* § 3-3-8(b).

¶ 7        Section 3-3-7 of the Code provides:

"The conditions under which the parole or [MSR] is to be served shall be communicated to the person in writing prior to his or her release, and he or she shall sign the same before release. A signed copy of these conditions, including a copy of an order of protection where one had been issued by the criminal court, shall be retained by the person and another copy forwarded to the officer in charge of his or her supervision." *Id.* § 3-3-7(c).

The signed copy of the MSR conditions is referred to as the parolee's "MSR agreement."

¶ 8        Since 2002, a mandatory condition of every MSR is that the parolee must "consent to a search of his or her person, property, or residence under his or her control." *Id.* § 3-3-7(a)(10); see Pub. Act 92-460, § 5 (eff. Jan. 1, 2002) (amending 730 ILCS 5/3-3-7); see *Wilson*, 228 Ill. 2d at 48-49 & n.3 (acknowledging this statutory change). This kind of condition is generally known as a "parole search condition" or simply a "search condition," and a search conducted pursuant to such a condition is called a "suspicionless parole search," a concept we explain in further detail below. Before 2002, the Board had the discretion to impose a parole search condition, which it did in at least some circumstances. See *People v. Moss*, 217 Ill. 2d 511, 523 (2005) (quoting a search condition from the defendant's MSR agreement); *People v. Lampitok*, 207 Ill. 2d 231, 236 (2003) (same). We will use the term "mandatory search condition" when referring to the search condition required by section 3-3-7(a)(10) to distinguish it from these earlier, discretionary search conditions.

¶ 9                          B. The Present Case

¶ 10        On September 14, 2022, defendant arrived in Normal, Illinois, on an Amtrak train. Shortly after he arrived, he was detained by officers with Illinois State Police Task Force 6, who

had received a tip that he might be transporting methamphetamine to Normal from St. Louis, Missouri. The officers searched defendant and found a clear plastic bag of white powder that was later shown to be methamphetamine. Defendant was arrested and charged with several offenses including methamphetamine trafficking (720 ILCS 646/56 (West 2022)).

¶ 11 Before trial, defendant moved to suppress the evidence from the search pursuant to section 114-12 of the Code of Criminal Procedure of 1963 (Code of Criminal Procedure) (725 ILCS 5/114-12 (West 2022)). At the hearing on the motion, the State's sole argument against suppression was that defendant was subject to the mandatory parole search condition, making the search permissible even in the absence of suspicion. Inspector Alex Freshour, one of the officers who searched defendant, testified that he confirmed before conducting the search that defendant was on Illinois MSR, but Freshour also testified that he was unaware whether defendant's particular MSR agreement contained the mandatory search condition. The State did not introduce defendant's MSR agreement into evidence. The trial court concluded that the search was a valid suspicionless parole search and denied defendant's motion.

¶ 12 The evidence obtained from the search was ultimately admitted at defendant's trial. Defendant was convicted of all charges, but his conviction for methamphetamine trafficking merged with the remaining convictions under the one-act, one-crime rule. The trial court sentenced defendant to 35 years' imprisonment.

¶ 13 This appeal followed.

¶ 14 II. ANALYSIS

¶ 15 Defendant argues that his conviction must be reversed outright because the trial court erred by declining to suppress the evidence from the search and, in the absence of that evidence, he would not have been convicted.

¶ 16                              A. Legal Standard

¶ 17        Motions to suppress illegally seized evidence are governed by section 114-12 of the Code of Criminal Procedure, which provides that "[a] defendant aggrieved by an unlawful search and seizure may move the court *** to suppress as evidence anything so obtained on the ground that[ ] *** [t]he search and seizure without a warrant was illegal." *Id.* § 114-12(a)(1). At a hearing on a motion to suppress evidence, the trial court

> "shall receive evidence on any issue of fact necessary to determine the motion[,] and the burden of proving that the search and seizure were unlawful shall be on the defendant. If the motion is granted[,] the property *** shall not be admissible in evidence against the [defendant] at any trial." *Id.* § 114-12(b).

In order to prevail on the motion, the defendant

> "must make a *prima facie* case that the evidence was obtained pursuant to an illegal search or seizure. *** If [the] defendant makes a *prima facie* case, the burden shifts to the State to present evidence to counter the defendant's *prima facie* case. [Citation.] 'However, the ultimate burden of proof remains with the defendant.' "
> *People v. Hagestedt*, 2025 IL 130286, ¶ 15 (quoting *People v. Brooks*, 2017 IL 121413, ¶ 22).

The State appears not to dispute that defendant made a *prima facie* case, so we assume without deciding that reversal is required unless the State met its burden of production or defendant failed to satisfy his ultimate burden of proof.

¶ 18        Defendant argues that the search was illegal because it violated the fourth amendment to the United States Constitution (U.S. Const., amend. IV) and article I, section 6, of the Illinois Constitution (Ill. Const. 1970, art. I, § 6). Illinois courts interpret these constitutional

provisions in "limited lockstep." *People v. Caballes*, 221 Ill. 2d 282, 316 (2006). As such, "federal authority *** prevails, unless 'the language of our constitution, the constitutional convention debates and committee reports, or state custom and practice *** indicate that the provisions of our constitution are intended to be construed differently.' " *Hampton v. Metropolitan Water Reclamation District of Greater Chicago*, 2016 IL 119861, ¶ 10 (quoting *Hope Clinic for Women, Ltd. v. Flores*, 2013 IL 112673, ¶ 83). Under the lockstep doctrine, we first consider whether the fourth amendment affords defendant relief before addressing article I, section 6, of the Illinois Constitution. *Caballes*, 221 Ill. 2d at 309-10.

¶ 19 We note that neither party disputes the accuracy of Freshour's testimony as it pertains to the issues below, so our standard of review is *de novo*. *City of Champaign v. Torres*, 214 Ill. 2d 234, 241 (2005) ("Where, as here, the question on appeal is limited to application of the law to undisputed facts, the standard of review is *de novo*.").

¶ 20 B. The Fourth Amendment

¶ 21 1. Samson *and* Wilson

¶ 22 The fourth amendment provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ***." U.S. Const., amend. IV; see *Mapp v. Ohio*, 367 U.S. 643, 655 (1961) (providing that the fourth amendment is enforceable against the states).

> "The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.' " *United States v. Knights*, 534 U.S. 112, 118-19 (2001) (quoting *Wyoming v. Houghton*, 526

U.S. 295, 300 (1999)).

¶ 23  The fourth amendment does not categorically prohibit suspicionless parole searches (*Samson v. California*, 547 U.S. 843, 851, 857 (2006)), but the search must nevertheless be "reasonable under [the] general Fourth Amendment approach of 'examining the totality of the circumstances,' [citation], with the *** search condition being a salient circumstance" (*Knights*, 534 U.S. at 118-19; accord *King v. Ryan*, 153 Ill. 2d 449, 457 (1992) ("Whether a particular search is reasonable depends on the facts and circumstances giving rise to the search as well as the nature of the search itself.").

¶ 24  The California statute at issue in *Samson* required parolees to " 'agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause.' " *Samson*, 547 U.S. at 846 (quoting Cal. Penal Code § 3067(a) (West 2000)). There are slight differences in wording between California's statute and Illinois's statute governing MSR conditions, which requires that every parolee must *consent* to a search and that the parole search condition must be *communicated* in writing and *signed*. 730 ILCS 5/3-3-7(a)(10), (c) (West 2022). However, the Illinois Supreme Court has explained that "the legal and practical effect of [Illinois's] search condition is no different from that of the search condition at issue in *Samson*." *Wilson*, 228 Ill. 2d at 49. Accordingly, the court concluded that "the reasoning set forth in *Samson* control[led its] analysis." *Id.* at 52. We note that neither the "agree[ment]" in *Samson* nor the "consent" in *Wilson* were held to implicate the principle that true consent to a search constitutes a complete waiver of fourth amendment rights. *Samson*, 547 U.S. at 852 n.3; *Wilson*, 228 Ill. 2d at 39 (citing *Lampitok*, 207 Ill. 2d at 260-61).

¶ 25  The United States Supreme Court acknowledged two procedural safeguards

imposed by California law to ensure that a particular suspicionless parole search was reasonable: (1) the search could not be " 'arbitrary, capricious or harassing' " (*Samson*, 547 U.S. at 856 (quoting *People v. Reyes*, 968 P.2d 445, 450-51 (Cal. 1998), and citing Cal. Penal Code § 3067(d) (West 2000))) and (2) the officer conducting the search was required to have "knowledge that the person stopped for the search [was] a parolee" (*id.* at 856 n.5 (citing *People v. Sanders*, 73 P.3d 496, 505-06 (Cal. 2003))). We express no opinion as to whether *Samson* or *Wilson* adopted California's prohibition on arbitrary, capricious, or harassing searches as a constitutional requirement because defendant has not alleged that the search in this case fits that description. See *People v. Ringland*, 2017 IL 119484, ¶ 37 (declining to reach an issue not essential to the disposition of the appeal).

¶ 26        Although *Wilson* did not expressly adopt the knowledge requirement mentioned in *Samson*, this court has since held that a suspicionless search under Illinois's mandatory search condition is unreasonable when the officer conducting the search lacked advance knowledge that the person being searched was on Illinois MSR. *People v. Coleman*, 2013 IL App (1st) 130030, ¶ 21. In other words, an otherwise invalid search is not salvaged because the officer later learns that the defendant was on MSR at the time of the search. We recognize that the Ninth Circuit Court of Appeals has interpreted California's advance knowledge requirement as requiring only an objectively reasonable belief, rather than actual knowledge, that the person searched was on parole. *United States v. Estrella*, 69 F.4th 958, 968 (9th Cir. 2023). We need not determine whether this lower standard should apply because the outcome in this case would be the same either way.

¶ 27        Before addressing whether the particular search in this case was unreasonable, however, we must address defendant's argument that the search was impermissible.

¶ 28                                2. *The MSR Agreement*

¶ 29       The principal dispute between the parties involves the significance of a parolee's acceptance of the MSR agreement. Defendant argues that a parolee is not subject to the mandatory search condition unless it is included in his MSR agreement, whereas the State argues that the mandatory search condition is imposed on parolees by operation of section 3-3-7(a)(10) of the Code, irrespective of whether the condition is omitted from the MSR agreement. In deciding this case, we decline to resolve the broader question of when a mandatory parole condition might be enforceable in the abstract; our narrow concern is whether suppression of the evidence from a suspicionless parole search is required when the mandatory search condition was omitted from the parolee's MSR agreement or when there was no MSR agreement. See *In re Estate of Boyar*, 2013 IL 113655, ¶ 36 ("Established principles of judicial review counsel against consideration of issues which are not essential to the disposition of the cause ***.").

¶ 30       *Samson* addressed this issue when analyzing the degree to which a parole search condition intrudes upon a parolee's privacy:

> "Additionally, as we found 'salient' in *Knights* with respect to the probation search condition, the parole search condition under California law—requiring inmates who opt for parole to submit to suspicionless searches by a parole officer or other peace officer 'at any time,' Cal. Penal Code Ann. § 3067(a) (West 2000)— was 'clearly expressed' to [Samson]. *Knights*, 534 U.S., at 119. He signed an order submitting to the condition and thus was 'unambiguously' aware of it. *Ibid.* In *Knights*, we found that acceptance of a clear and unambiguous search condition 'significantly diminished Knights' reasonable expectation of privacy.' *Id.*, at 120. Examining the totality of the circumstances pertaining to [Samson's] status as a parolee, 'an established variation on imprisonment,' [citation], including the plain

terms of the parole search condition, we conclude that [Samson] did not have an expectation of privacy that society would recognize as legitimate." *Samson*, 547 U.S. at 852.

¶ 31    From defendant's perspective, this paragraph means that Samson's *actual acceptance* of the search condition *in his parole agreement* was indispensable, *i.e.*, absent actual acceptance, the Court would have found the search unreasonable. From the State's perspective, Samson's actual acceptance was irrelevant; the Court was opining that a suspicionless parole search pursuant to a search condition *required by statute* is reasonable when, among other things, *the statute mandates acceptance* of the search condition.

¶ 32    As such, defendant endorses an extremely narrow interpretation of *Samson*: a defendant's parole agreement including the mandatory search condition must be introduced into evidence for the suspicionless parole search to be found reasonable. In contrast, the State endorses an extremely broad interpretation: a defendant's actual acceptance of the mandatory search condition need not be shown for the suspicionless parole search to be found reasonable. Although defendant argues that his interpretation is the one entirely consistent with the facts of *Samson*, that alone does not mean that the State's interpretation of *Samson* is incorrect because there was no need for the Court to explain in *Samson* whether it would have reached the same conclusion in the hypothetical situation where Samson's parole agreement had not been introduced into evidence. See *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (explaining that the federal courts do not apply their legal conclusions to hypothetical facts). Indeed, the Court never cited or quoted Samson's parole agreement; apart from the paragraph quoted above, the Court focused entirely on the language of the statute. See *Samson*, 547 U.S. at 846-47, 852, 856.

¶ 33    Ultimately, the State has the better of this argument. In *Samson*, the Court did not

find that acceptance was an indispensable requirement of reasonableness but an "[a]dditional[ ]" aspect of the totality of the circumstances pertaining to a parolee's diminished expectation of privacy (see *id.* at 850-52), against which the Court weighed the State's legitimate governmental interests (see *id.* at 853-55). *Cf. Illinois v. Rodriguez*, 497 U.S. 177, 187 (1990) (noting that a search can be reasonable based on *apparent* consent rather than *actual* consent because the ultimate question "is not whether the right to be free of searches has been *waived*, but whether the right to be free of *unreasonable* searches has been *violated*" (emphases in original)). In contrast, the Court treated California's knowledge requirement as indispensable. *Samson*, 547 U.S. at 856 n.5 ("Under California precedent, we note, an officer would not act reasonably in conducting a suspicionless search absent knowledge that the person stopped for the search is a parolee."). As such, the question in this case is how the absence of evidence showing actual acceptance of a mandatory search condition affects the balancing of parolees' privacy interests and legitimate government interests under the fourth amendment.

¶ 34    Defendant hypothesizes—but does not expressly claim—that his MSR agreement might not have included the mandatory search condition or that he might have been released into MSR without signing an MSR agreement. Assuming this were the case, defendant's subjective expectation of privacy may indeed have been greater due to his lack of unambiguous awareness of the mandatory search condition. However, we must still weigh this greater subjective invasion of privacy against the State's interests, and "[i]n determining what is reasonable under the Fourth Amendment, [courts] have given great weight to the 'essential interest in readily administrable rules.' " *Virginia v. Moore*, 553 U.S. 164, 175 (2008) (quoting *Atwater v. City of Lago Vista*, 532 U.S. 318, 347 (2001)).

¶ 35    "Fourth Amendment rules ought to be expressed in terms that are readily applicable

by the police in the context of the law enforcement activities in which they are necessarily engaged and not qualified by all sorts of ifs, ands, and buts." (Internal quotation marks omitted.). *Atwater*, 532 U.S. at 347. It is telling that defendant's arguments do not focus on Freshour's law enforcement activities but on the prior activities of the corrections official responsible for defendant's MSR agreement and, to a lesser extent, the subsequent activities of the prosecutor who failed to introduce defendant's MSR agreement into evidence at the suppression hearing. But when "evaluat[ing] the reasonableness of a particular search or seizure in light of the particular circumstances," the relevant question is: "[W]ould the facts available to the officer at the moment of the seizure or the search 'warrant a [person] of reasonable caution in the belief' that the action taken was appropriate?" *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968) (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)).

¶ 36                            3. *The Advance Knowledge Requirement*

¶ 37            Employing these principles, we have explained the readily administrable rule for suspicionless parole searches as follows: "*Samson* and *Wilson* essentially demonstrate that an officer's knowledge that the defendant was on MSR in and of itself renders a suspicionless search reasonable." *People v. Collins*, 2015 IL App (1st) 131145, ¶ 30; see *Samson*, 547 U.S. at 846-47 (noting that the officer conducted the search "based *solely* on [the defendant's] *status as a parolee*" (emphases added)).

¶ 38            The State defends this approach, arguing, in effect, that an officer of reasonable caution would believe a suspicionless search is appropriate based on his knowledge that the parolee is on Illinois MSR and that under Illinois law, every parolee on MSR has signed an MSR agreement clearly expressing the mandatory search condition, absent a dereliction of duty by a corrections official. Defendant disagrees, arguing, in effect, that an officer of reasonable caution

would also confirm that no such dereliction of duty occurred. See *United States v. Williams*, 702 F. Supp. 2d 1021, 1030-31 (N.D. Ill. 2010) (adopting the view that the officer conducting the search needed to know "whether the search condition, though mandated by law, was omitted from [the parolee's] MSR agreement"). In the context of law enforcement duties, we think that requiring this additional degree of caution is unreasonable. See *Collins*, 2015 IL App (1st) 131145, ¶ 30 (declining to adopt *Williams*'s nonbinding holding as it pertained to Illinois MSR).

¶ 39    While no system involving paperwork can be perfect, public officials are still presumed to have fulfilled their duties (*County of Cook ex rel. Rifkin v. Bear Stearns & Co.*, 215 Ill. 2d 466, 481 (2005)), and it is well established that the fourth amendment does not "den[y] law enforcement the support of the usual inferences which reasonable [people] draw from evidence" (*Johnson v. United States*, 333 U.S. 10, 13-14 (1948)). Furthermore, the question of whether a person is on Illinois MSR is a simple yes-or-no proposition that can be quickly and easily communicated between law enforcement officers. See *Samson*, 547 U.S. at 846 (noting that the officer conducting the search "confirmed, by radio dispatch, that [the defendant] was on parole"). In contrast, a parolee's particular MSR agreement is required to be retained only by the parolee himself and the officer in charge of supervising him. 730 ILCS 5/3-3-7(c) (West 2022). It would be unreasonable to require law enforcement officers to obtain the parolee's MSR agreement from one of those two people simply to ensure the language of the particular parole search condition complies with the statute or otherwise encompasses the particular search sought to be conducted. We decline to impose this arduous requirement. See *Hill v. California*, 401 U.S. 797, 804 (1971) ("[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment ***.").

¶ 40    Accordingly, we conclude that the State can meet its burden of production at a

suppression hearing by showing that the officer conducting the search had actual knowledge that the defendant was on MSR. Here, it is undisputed that defendant was on MSR and the officers knew as much when they searched him, so the trial court properly found that the State met its burden of production.

¶ 41                                    4. *Suppression of the Evidence*

¶ 42            As mentioned above, once the State met its burden of production at the suppression hearing, defendant had the ultimate burden of proof. Defendant argues that he could not satisfy his burden of proof because the State failed to produce the MSR agreement in discovery, although we note that defendant appears never to have alleged that he failed to receive his copy of the MSR agreement as required by law. See 730 ILCS 5/3-3-7(c) (West 2022).

¶ 43            We leave open that possibility that, in an exceptional case where the State is unable to introduce an MSR agreement with no deficiencies, an officer's knowledge regarding the missing or deficient MSR agreement might be relevant to the critical issue at the suppression hearing— whether the officer knew that the defendant was on MSR—or to an allegation that the search was arbitrary, capricious, or harassing. However, those concerns are not present in this case because Freshour testified that the officers had no knowledge of defendant's MSR agreement, and defendant has not alleged that the search was arbitrary, capricious, or harassing.

¶ 44            Even assuming for the sake of argument that defendant could have proven that his MSR agreement was missing or deficient, suppression of the evidence from the search would still have been unwarranted in this case. See *Lampitok*, 207 Ill. 2d at 241 ("The [exclusionary] rule is not designed to redress the invasion of privacy experienced by the search victim. [Citation.] Instead, the exclusionary rule is a judicially created remedy that protects fourth amendment rights by deterring future unlawful police conduct."). Here, the blame for the inadequacy would not rest

with any of the officers involved in the search but with an unknown official working for the Board or the Department, and "[a]n error that arises from nonrecurring and attenuated negligence is *** far removed from the core concerns that led [the United States Supreme Court] to adopt the [exclusionary] rule in the first place." *Herring v. United States*, 555 U.S. 135, 144 (2009).

¶ 45 *Herring* is illustrative on this point. There, an unknown official working for a sheriff's office failed to update the county's database of active warrants to show that the defendant's arrest warrant had been recalled. *Id.* at 137-38. Relying on the out-of-date information from the database, a law enforcement officer in a neighboring county made a warrantless arrest of the defendant and found methamphetamine in his pocket. *Id.* at 137. The United States Supreme Court found that the exclusionary rule did not apply, emphasizing that "the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id.* at 144. Although defendant suggests that the State's failure to introduce his MSR agreement might have been due to systemic negligence, that suggestion is unsupported and inconsistent with defendant's own assertion that the State has been able to show "actual proof of agreement to the condition" in "countless other cases." As in *Herring*, suppression was unwarranted here.

¶ 46 Because we are affirming on the grounds relied on by the trial court, we need not address defendant's request for a remand to address evidentiary matters relating to different issues.

¶ 47                                5. People v. Vasquez

¶ 48 Finally, we address defendant's argument that the State is categorically required to introduce a defendant's MSR agreement into evidence at a motion to suppress evidence from a suspicionless parole search. While we have rejected the proposition that suppression turns on the contents of defendant's MSR agreement, we have operated on the assumption that the State was

required to show that he was actually on MSR in order to establish the officers' actual knowledge that he was on MSR. *Contra Estrella*, 69 F.4th at 972 (allowing for the officers to have a degree of uncertainty). A defendant's MSR agreement is strong evidence of the fact that he was on MSR at the time of the search, although it is not conclusive because it cannot reflect whether the Board terminated his term of MSR early. See 730 ILCS 5/3-3-8 (West 2022).

¶ 49　　　　However, the fact that defendant was actually on MSR—a fact he has never contested—was sufficiently established by Freshour's testimony that he confirmed defendant was in MSR custody, which the trial court was entitled to credit. We note that because defendant failed to object to this testimony, any challenge to its admissibility is forfeited on appeal.

¶ 50　　　　That said, defendant is correct that in cases involving suspicionless parole searches, including *Collins* and *Samson*, the prosecution has almost invariably introduced the defendant's parole agreement into evidence. While this may be a testament to prosecutors' thoroughness, it does not mean that these cases would have turned out differently had the relevant agreements not been introduced into evidence. Indeed, these cases offer little support for defendant's argument because courts generally do not render advisory opinions about what they would have held if they had been presented with the same facts through different evidence. See *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009) (noting that Illinois courts generally do not issue advisory opinions); see also *Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983) (noting that federal courts do not "engage in a finely tuned review of the wisdom of state evidentiary rules").

¶ 51　　　　Nevertheless, defendant's claim that the State's introduction of the MSR agreement is indispensable does have support in *People v. Vasquez*, 388 Ill. App. 3d 532 (2009). In *Vasquez*, the State appealed from an order of the trial court suppressing evidence from a traffic stop. *Id.* at 542. The State argued on appeal that the evidence should not have been suppressed because one

of the officers "testified that the defendant was on parole at the time" of the traffic stop. *Id.* at 543. However, the State had not "argue[d] in the trial court that the police could stop the defendant's car, without a warrant or probable cause, and temporarily detain the defendant because he was on parole." *Id.* Because the State was the appellant, the appellate court found that it had forfeited the issue.

¶ 52    The court went on to explain why it found the record inadequate to enable it to decide the forfeited issue:

> "It was the State's burden to provide the trial court with (1) a certified copy of the defendant's prior conviction, and (2) a certified copy of the conditions of the defendant's parole. [Citations.] Prior convictions of an accused, like [the defendant], are only proved by public records. [Citations.] We are unable to consider this issue because the State failed to present the public records that proved that [the defendant] was a convicted felon, that he was on parole and that conditions were placed on his parole. Without certified documents in the record to establish the fact of [the defendant's] conviction, parole, and the conditions of his parole, neither the trial court nor this court can confirm the fact that the defendant was a convicted felon on parole and that a condition of the defendant's parole was that he was subject to a search by a police officer, without a warrant or probable cause, at any time and in any state. Accordingly, because the State has failed to provide a sufficient record for this court to review this issue and determine whether [the defendant] was on parole and subject to a search, without a warrant or probable cause, at any time, we assume that the trial court's decision was correct." *Id.* at 543-44.

¶ 53       We have several misgivings about *Vasquez*. For starters, we see no reason why evidence that a defendant is subject to conditions of parole would ever need to be corroborated by evidence that he was actually convicted of the offense for which he is on parole. If the State can show that the defendant was on parole, the suppression hearing should not be an opportunity for him to argue that he was nevertheless wrongfully convicted of the underlying offense.

¶ 54       While it is true that evidentiary restrictions sometimes apply to proof of convictions or of the contents of documents such as parole agreements, ordinary restrictions on evidence tend to be relaxed at a suppression hearing. See *People v. Patterson*, 192 Ill. 2d 93, 111-12 (2000). For that matter, we are unfamiliar with a similar restriction on the kind of evidence used to prove the fact that a person is on parole or even that he has a parole agreement. *Cf. United States v. Iverson*, 818 F.3d 1015, 1024 (10th Cir. 2016) (noting that a company's insured status could be proven through witness testimony rather than a certified copy of the insurance policy). By way of comparison, testimony that a person is divorced is generally admissible based on personal knowledge without the need to introduce certified copies of the person's divorce decree and marital settlement agreement (unless, perhaps, the fact of the divorce is genuinely contested).

¶ 55       In any event, it suffices to conclude that this case is distinguishable because in *Vasquez*, the defendant was a resident of Texas, so the officer's testimony that he was on "parole" failed to establish that he was on Illinois MSR as opposed to parole from a jurisdiction without a mandatory search condition. See *Samson*, 547 U.S. at 855 (noting that "the majority of States and the Federal Government *** hav[e] systems that permit parolee searches based upon some level of suspicion").

¶ 56              C. Article I, Section 6, of the Illinois Constitution

¶ 57       Because the federal constitution affords defendant no relief, we turn to the Illinois

Constitution. *Caballes*, 221 Ill. 2d at 309-10. Article I, section 6, of the Illinois Constitution provides, "The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means." Ill. Const. 1970, art. I, § 6. Because this provision is interpreted in limited lockstep with the fourth amendment, "the Illinois Supreme Court conducts reasonableness balancing for the invasion of privacy under the same framework as searches under the Fourth Amendment." *Naperville Smart Meter Awareness v. City of Naperville*, 900 F.3d 521, 525 n.4 (7th Cir. 2018) (citing *In re May 1991 Will County Grand Jury*, 152 Ill. 2d 381, 391-92 (1992)).

¶ 58       For this court to diverge from the United States Supreme Court under the lockstep doctrine, the defendant must show "evidence in the language of the state constitution or in the debates and committee reports from its drafting that shows the drafters intended the state constitution to be construed differently." *Moss*, 217 Ill. 2d at 518. Absent such a showing, the United States Supreme Court's interpretation of the fourth amendment is not merely persuasive authority but a binding interpretation of article I, section 6, of the Illinois Constitution. See, *e.g.*, *Caballes*, 221 Ill. 2d at 315-16 (declining to recognize an exception to the lockstep doctrine when "[n]othing in the language of article I, section 6, or in the history of the constitutional debates suggest[ed] an intent that the use of trained dogs by the police be considered an unreasonable search or seizure"); see also *People v. Sneed*, 2023 IL 127968, ¶¶ 134-68 (Neville, J., dissenting) (extensively criticizing the lockstep doctrine).

¶ 59       Here, "defendant has not made a case for an exception to the lockstep doctrine," so we conclude that the search was reasonable under article I, section 6, of the Illinois Constitution, as well as the fourth amendment to the United States Constitution. *Caballes*, 221 Ill. 2d at 315;

accord *People v. Johnson*, 2020 IL App (1st) 172987, ¶ 46 (declining to depart from the lockstep doctrine for suspicionless parole searches).

¶ 60                                                III. CONCLUSION

¶ 61            For the reasons stated, we affirm the trial court's judgment.

¶ 62            Affirmed.

*People v. Pyles*, 2025 IL App (4th) 240220

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of McLean County, No. 22-CF-939; the Hon. William A. Yoder, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Catherine K. Hart, and Darrel F. Oman, of State Appellate Defender's Office, of Springfield, for appellant. |
| **Attorneys for Appellee:** | Erika Reynolds, State's Attorney, of Bloomington (Patrick Delfino, Thomas D. Arado, and Jamie L. Bellah, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |